# United States Court of Appeals
## For the First Circuit

No. 12-2184

PHILLIP GOLDSTEIN,

Plaintiff, Appellant,

v.

WILLIAM F. GALVIN,
SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Torruella, Selya and Lipez,
Circuit Judges.

Andrew Good, with whom Philip G. Cormier and Good & Cormier were on brief, for appellant.
Pierce O. Cray, Assistant Attorney General, with whom Martha Coakley, Attorney General, was on brief, for appellee.

June 10, 2013

**SELYA, Circuit Judge.** A hoary proverb teaches that large oaks from little acorns grow. That is a natural progression. This case, however, features a less natural progression: an obscure violation of a state securities regulation, not especially egregious in itself, has led to a litigation extravaganza — an extravaganza that pits a prominent hedge fund operator against a state official with broad regulatory authority over the securities industry. This appeal is the latest (but, we fear, not necessarily the last) chapter in the tale.

The matter before us turns on allegations in the plaintiff's amended complaint that the state official used his oversight powers to retaliate unlawfully against the plaintiff for his opposition to what he deems excessive regulation of the securities industry. The case raises a farrago of interesting questions about the scope and extent of the immunities afforded to state officials whose duties encompass both adjudicatory and prosecutorial functions. The district court resolved these questions against the plaintiff and dismissed the action. Goldstein v. Galvin, No. 10-10139, 2012 WL 4481206, at *2-4 (D. Mass. Sept. 28, 2012). After careful consideration, we affirm.

## I. BACKGROUND

Plaintiff-appellant Phillip Goldstein is a principal of Bulldog Investors General Partnership, a hedge fund business. By his own description, the plaintiff is "an outspoken public critic

of excessive regulation of hedge funds." He takes particular pride in having invalidated a bothersome federal securities rule. See Goldstein v. SEC, 451 F.3d 873 (D.C. Cir. 2006).

Defendant-appellee William F. Galvin, an elected official, is the Secretary of the Commonwealth of Massachusetts. Under state law, the Secretary is charged with oversight of the local securities industry. See Mass. Gen. Laws ch. 110A, § 406(a). The plaintiff alleges that, in retaliation for his anti-regulatory stance, the Secretary "induced prosecutorial advocates in the Enforcement Section of the Massachusetts Securities Division to" prosecute an administrative complaint against him. The administrative complaint (which named as respondents the plaintiff and other individuals and entities) was filed on January 31, 2007. It charged the respondents with violating the Massachusetts Uniform Securities Act (the Act), Mass. Gen. Laws ch. 110A, § 301, by offering unregistered securities for sale in Massachusetts. Although the Secretary did not sign the complaint — it was signed instead by four of his minions in the Enforcement Section — the Secretary is charged with enforcing the Act and can delegate that authority to others. See id. § 406(a); see also id. ch. 9, § 10A.

In answering the administrative complaint, the respondents interposed a number of affirmative defenses, including a defense premised on the First Amendment. During the course of the administrative proceeding, the hearing officer ruled that the

First Amendment issue was not in play and rejected the other affirmative defenses.  The acting director of the Securities Division adopted the hearing officer's findings, decided that the respondents had violated the Act, ordered them to cease and desist, and imposed a fine.

The respondents sought judicial review.  Their efforts were unsuccessful.  See Bulldog Investors Gen. P'ship v. Sec'y of the Commonwealth (Bulldog I), 929 N.E.2d 293, 303 (Mass. 2010).  Like the administrative proceeding itself, that review did not encompass the First Amendment issue.  Id. at 301-02.

During the pendency of the proceedings described above, the respondents (including the plaintiff) filed a separate action in a Massachusetts state court in an attempt to vindicate their First Amendment rights.  See Bulldog Investors Gen. P'ship v. Sec'y of the Commonwealth (Bulldog II), 953 N.E.2d 691 (Mass. 2011).  This action, brought pursuant to 42 U.S.C. § 1983 against the Secretary in his official capacity, challenged "the constitutionality of the [state] regulations that prohibit general solicitation and advertising by anyone offering unregistered securities," which allegedly infringed upon the respondents' "constitutional[] entitle[ment] to maintain their Web site and communicate with any interested person."  Id. at 700.  The Massachusetts courts, up to and including the Supreme Judicial Court, rejected these section 1983 claims.  Id. at 718.

-4-

Before the dust had settled (that is, while <u>Bulldog I</u> and <u>Bulldog II</u> were still pending on appeal in the state court system), the plaintiff commenced another section 1983 action. This action, filed in the federal district court, alleged that the Secretary had (i) induced the Enforcement Section to deviate from normal investigatory practices and charging standards; (ii) induced the Enforcement Section to file the administrative complaint; and (iii) gone out of his way to announce, on his website, that "Secretary Galvin Charges Phillip Goldstein and Bulldog Investors for unregistered securities offering." The district court dismissed the suit, concluding that the defendant was absolutely immune with respect to the prosecution of the enforcement action and qualifiedly immune with respect to the website announcement. <u>See</u> <u>Goldstein</u>, 2012 WL 4481206, at *2-3.

This timely appeal ensued. Because the district court dismissed the complaint on immunity grounds, we review de novo. <u>Coggeshall</u> v. <u>Mass. Bd. of Regist. of Psychologists</u>, 604 F.3d 658, 662 (1st Cir. 2010). In that endeavor, we take as true the well-pleaded facts set forth in the plaintiff's amended complaint. <u>See</u> <u>SEC</u> v. <u>Tambone</u>, 597 F.3d 436, 438 (1st Cir. 2010) (en banc).

## II. CLAIM PRECLUSION

The Secretary argues that the doctrine of claim preclusion barred the maintenance of the underlying action. This argument hinges on the preclusive effect of <u>Bulldog II</u>.

When a federal court considers the preclusive effect of an earlier state court judgment, it must apply that state's preclusion principles. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also 28 U.S.C. § 1738. This remains true even when the new case poses a quintessentially federal question. See Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 66 (1st Cir. 2008). Accordingly, we look here to Massachusetts preclusion principles.

Under Massachusetts law, "[c]laim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." Kobrin v. Bd. of Regist. in Med., 832 N.E.2d 628, 634 (Mass. 2005) (internal quotation marks omitted). Three elements must be satisfied to trigger the application of this doctrine: the parties to the prior and present actions must either be identical or in privity; the causes of action must arise out of the same nucleus of operative fact; and the prior action must have produced a final judgment on the merits. See id. In this instance, our inquiry begins and ends with the first element.

In Bulldog II, suit was brought against the Secretary in his official capacity. Here, however, the suit is against the Secretary in his individual capacity. This distinction is critically important.

-6-

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 n.55 (1978). In other words, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). This means, of course, that a public official, sued only in his official capacity, is a proxy for the government entity that employs him and is in privity with that entity. See Town of Seabrook v. New Hampshire, 738 F.2d 10, 11 (1st Cir. 1984) (per curiam). The situation is quite different when an official is sued in his individual capacity. By definition, such a suit takes aim at the individual, not the government entity with which he is associated. Such a defendant is, therefore, not considered to be in privity with the government entity. See, e.g., Conner v. Reinhard, 847 F.2d 384, 395 (7th Cir. 1988).

The flipside of this coin is that a person sued in his official capacity is a different party, in contemplation of law, than the same person sued in his individual capacity. It follows inexorably that a person sued only in his official capacity is neither identical to, nor in privity with, the same person sued in his individual capacity. See Mitchell v. Chapman, 343 F.3d 811, 823 (6th Cir. 2003); Andrews v. Daw, 201 F.3d 521, 526 (4th Cir. 2000); Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183, 188 (5th

Cir. 1990); Willner v. Budig, 848 F.2d 1032, 1034 n.2 (10th Cir. 1988) (per curiam); Conner, 847 F.2d at 395-96; Gregory v. Chehi, 843 F.2d 111, 119-21 (3d Cir. 1988); Headley v. Bacon, 828 F.2d 1272, 1279 (8th Cir. 1987); Roy v. City of Augusta, 712 F.2d 1517, 1521-22 (1st Cir. 1983); see also Restatement (Second) of Judgments § 36(2). The upshot is that a person who is sued in one capacity (whether official or individual) cannot assert a defense of claim preclusion in a later action in which he is sued in a different capacity.

We conclude, therefore, that "an official who has litigated [a claim] in his official capacity is not precluded from relitigation in his personal capacity." 18A Charles Alan Wright et al., Federal Practice and Procedure § 4458 (2d ed. updated Apr. 2013). Similarly, we conclude that a person who has defended a suit brought against him in his official capacity is not protected by principles of claim preclusion from a subsequent suit brought against him by the same plaintiff(s) in his individual capacity.[1] Based on these conclusions, we reject the Secretary's claim preclusion argument. Because the Secretary was sued only in his official capacity in Bulldog II, the plaintiff is not precluded from bringing this second section 1983 action against the Secretary in his individual capacity.

---

[1] To be sure, principles of issue preclusion might nonetheless apply. See, e.g., Kobrin, 832 N.E.2d at 634. Here, however, the Secretary does not raise any defense premised on issue preclusion.

## III.  ABSOLUTE IMMUNITY

42 U.S.C. § 1983 creates a private right of action through which plaintiffs may recover against state actors for constitutional violations.  See Rehberg v. Paulk, 132 S. Ct. 1497, 1501-02 (2012).  "Claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983."  Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004).

Section 1983 does not, however, have an unlimited remedial reach.  Among other things, it "was not meant to effect a radical departure from . . . the common-law immunities applicable in tort suits."  Rehberg, 132 S. Ct. at 1502.  Courts must look to federal law in appraising the viability of immunity defenses in section 1983 actions.  Wang v. N.H. Bd. of Regist. in Med., 55 F.3d 698, 701 (1st Cir. 1995).  The immunity-seeker must carry the devoir of persuasion to show that an immunity applies.  See Burns v. Reed, 500 U.S. 478, 486 (1991).

Immunities come in various shapes and sizes.  The Secretary's principal defenses in this case implicate claims of absolute immunity from suit.  Absolute immunity applies to a narrow swath of public officials, including "judges performing judicial acts within their jurisdiction," "prosecutors performing acts intimately associated with the judicial phase of the criminal process," and agency officials with functions similar to judges and/or prosecutors.  Bettencourt v. Bd. of Regist. in Med. of

Mass., 904 F.2d 772, 782 (1st Cir. 1990) (internal quotation marks omitted); see Butz v. Economou, 438 U.S. 478, 508-17 (1978). The protection afforded by an absolute immunity endures even if the official "acted maliciously and corruptly" in exercising his judicial or prosecutorial functions. Wang, 55 F.3d at 702 (internal quotation marks omitted). It likewise endures "in the presence of 'grave procedural errors.'" Nystedt v. Nigro, 700 F.3d 25, 32 (1st Cir. 2012) (quoting Stump v. Sparkman, 435 U.S. 349, 359 (1978)). The imperviousness of this protection is no accident: "[a]lthough this concept of absolute immunity allows some abuses of official power to go unredressed, it is necessary for the effective administration of government that government workers be able to perform their jobs without fear of liability." Ricci v. Key Bancshares of Me., Inc., 768 F.2d 456, 462 (1st Cir. 1985).

In determining whether an official qualifies for absolute immunity, an inquiring court must examine the particular functions that the official performs. See Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).

By statute, the Secretary is responsible for both adjudicatory and prosecutorial functions with respect to the Act. See Mass. Gen. Laws ch. 110A, §§ 406-408; id. ch. 9, § 10A. The Secretary asseverates that the actions of which the plaintiff

-10-

complains are protected under principles of judicial immunity, prosecutorial immunity, or both.[2] We test this asseveration.

An inquiry into the existence vel non of judicial immunity encompasses three questions. First, we ask whether the defendant carries out traditional adjudicatory functions. See Bettencourt, 904 F.2d at 783. If so, we ask whether the defendant is called upon to decide cases that are "sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions." Id. If the answers to these two queries are affirmative, we then ask whether the defendant performs his adjudicatory functions "against a backdrop of multiple safeguards designed to protect [the plaintiff's] constitutional rights." Id. We explain briefly why we need not conduct this tripartite inquiry here.

"Judicial acts are those that are 'intimately associated' with the judicial function." Nystedt, 700 F.3d at 31 (quoting Burns, 500 U.S. at 486). The bedrock judicial function is, of course, the adjudication of disputes. Id. Other traditional judicial functions include such things as "weighing evidence,

---

[2] Courts have used terms like "judicial immunity," "quasi-judicial immunity," "prosecutorial immunity," and "quasi-prosecutorial immunity" interchangeably. That imprecision arises because the doctrines sometimes apply to officials, like the Secretary, who are neither members of the judicial branch nor prosecutors in the classic sense. For ease in exposition, we use here the unadorned terms "judicial immunity" and "prosecutorial immunity."

making factual findings, reaching legal determinations, choosing sanctions, and expounding reasons for [] decisions."  Coggeshall, 604 F.3d at 663.

In his amended complaint, the plaintiff concedes, as he must, that the Secretary has "comprehensive power to interpret the Act to determine if it has been violated, . . . to adjudicate whether any violations . . . occurred, and to impose sanctions for violations of the Act or the rules and regulations adopted thereunder."  This concession has deep roots in the statutory scheme, which imbues the Secretary with a host of judicial functions:

- holding adjudicatory hearings and, in the course of them, administering oaths and affirmations, subpoenaing witnesses, compelling the attendance of witnesses, taking evidence, and requiring the production of documents and other materials, see Mass. Gen. Laws ch. 110A, § 407(b);

- after providing notice and opportunity for a hearing, determining that a person has violated the Act, id. § 407A(a); and

- ordering those who have violated the Act to cease and desist as well as imposing other penalties and sanctions, id.

All of these functions are intimately associated with the judicial task.  They are not, however, put in issue by the plaintiff's amended complaint.

The retaliation alleged in this case involves the Secretary's actions in choosing to bring, and actually bringing, the enforcement action.  It does not involve the Secretary's

-12-

actions in regard to the actual decisionmaking process; that is, the Secretary's performance of his core judicial functions. The plaintiff has offered no developed argumentation connecting the alleged retaliation to the Secretary's performance of these latter functions. Consequently, we need not pursue the judicial immunity inquiry. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining "that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Even though the Secretary performed judicial functions in the enforcement action, the plaintiff's retaliation claim, as presented here, does not implicate those functions.

This conclusion does not end our odyssey. The plaintiff vociferously challenges the Secretary's performance of non-judicial acts. The Secretary responds by asserting that his performance of these non-judicial acts is entitled to prosecutorial immunity. We turn to that assertion.

The baseline rule is that a state official who performs prosecutorial functions, including the initiation of administrative proceedings that may result in legal sanctions, is absolutely immune from damages actions. See Wang, 55 F.3d at 701; see also Butz, 438 U.S. at 516. By statute, the Secretary's responsibilities include administering and enforcing the Act, see Mass. Gen. Laws ch. 9, § 10A; id. ch. 110A, § 406(a); instituting proceedings, see id. ch. 110A, § 407(d); and determining whether

-13-

grounds exist to believe that "any person has violated . . . any provision of" the Act, id. § 407(a).

The Secretary exercised these powers in the case at hand. In doing so, he was performing prosecutorial functions. Acts that collectively comprise the pursuit of an enforcement action fit snugly within the realm of traditional prosecutorial functions. See, e.g., Butz, 438 U.S. at 516; Wang, 55 F.3d at 701.

In an effort to blunt the force of this reasoning, the plaintiff maintains that the Secretary acted beyond the bounds of prosecutorial immunity by "induc[ing] prosecutorial advocates" to file the administrative complaint. This divests an official of immunity, the plaintiff says, because there is a material difference between prosecuting a case (which comes within the scope of immunity) and inducing its prosecution (which falls outside the scope of immunity). While this dichotomy may be helpful in certain circumstances, it has no bearing here.

The plaintiff's argument relies disingenuously on the Supreme Court's decision in Hartman v. Moore, 547 U.S. 250 (2006). There, postal inspectors were alleged to have induced an Assistant United States Attorney to initiate a prosecution. See id. at 254, 262. The Court explained that the postal inspectors were strangers to the prosecutorial process and, therefore, did not enjoy prosecutorial immunity. See id. at 261-62.

-14-

Hartman is easily distinguishable. Here, unlike in Hartman, the defendant is not an outsider who seeks to persuade a prosecutor to initiate a proceeding. Rather, the Secretary is the official statutorily charged with enforcing the Act. That the Secretary may have ordered subordinates to carry out his prosecutorial functions is not equivalent to inducement. Compare, e.g., The American Heritage Dictionary of the English Language 1238 (4th ed. 2000) (defining "order" as "[t]o issue a command or instruction"), with, e.g., id. at 894 (defining "induce" as "[t]o lead or move, as to a course of action, by influence or persuasion"). In the last analysis, it is difficult to fathom how the Secretary could "induce" his subordinates, whose only authority was that which he had delegated to them, to bring an enforcement action that he himself was empowered to bring.

We add, moreover, that — contrary to the plaintiff's importunings — this delegation did not in any way, shape, or form curtail the Secretary's prosecutorial immunity. If a function is protected by an absolute immunity, it does not matter if a higher-ranking official delegates that function to a lower-ranking official. Notwithstanding the delegation, the scope of immunity is measured by reference to the higher-ranking official. See Ricci, 768 F.2d at 462.

The plaintiff also argues that some of the Secretary's acts were investigatory and, thus, not entitled to prosecutorial

immunity.  The Secretary's only involvement, he suggests, was in inducing the prosecution without sufficient cause or investigation. To this end, the plaintiff alleges that "[n]o discovery was conducted and no depositions of witnesses . . . were taken before the complaint was filed and served in order to investigate" the plaintiff's role in the activities under scrutiny.

The plaintiff is fishing in an empty stream.  His argument ignores the Court's teaching that "[t]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom."  Imbler v. Pachtman, 424 U.S. 409, 431 n.33 (1976).  Refined to bare essence, the argument amounts to no more than an accusation that the Secretary failed to investigate enough — a creative, but plainly unavailing, reformulation of an underlying challenge to the decision to prosecute.  See Butz, 438 U.S. at 516; Wang, 55 F.3d at 701.

The plaintiff makes a further effort to overcome the defense of absolute immunity.  He posits that, even if the Secretary is theoretically entitled to immunity for his judicial or prosecutorial functions in isolation, he cannot enjoy absolute immunity in a scenario in which he is statutorily charged with both functions.  In the plaintiff's view, these dual roles place so much power in a single official's hands that ordinary immunity rules do not hold sway.

The major flaw in the fabric of this argument is that we have decided, time and again, that officials who exercise both judicial and prosecutorial functions may nonetheless be entitled to absolute immunity. See, e.g., Coggeshall, 604 F.3d at 662-63; Wang, 55 F.3d at 701; Bettencourt, 904 F.2d at 782 & n.13. The rationale is straightforward: standard judicial immunity applies to the official's judicial functions and standard prosecutorial immunity applies to the official's prosecutorial functions. See Wang, 55 F.3d at 701; Bettencourt, 904 F.2d at 782 & n.13. These decisions are controlling here.

The plaintiff, represented by ingenious counsel, rejoins that our prior dual-role decisions are inapposite for three reasons. We reject each of the proffered reasons.

First, the plaintiff denigrates our prior dual-role cases as "licensing board cases" that "involved claims against officials for alleged unfairness in the performance of adjudicatory functions." His case, he says, is different: he is challenging the Secretary's actions in going forward with the administrative complaint, not the equities of the administrative decision itself.

This is a distinction without a difference. Even if the cases can be distinguished on this basis, we do not see how any such distinction is relevant to the immunity analysis.

Second, the plaintiff points out that none of our earlier cases "involved claims against a single individual empowered to

-17-

exercise the full panoply of functions" conferred upon the Secretary. This is true as far as it goes, but it does not take the plaintiff very far. Although our precedents have involved multi-person boards, other courts have had scant difficulty concluding that dual-role individuals, like members of dual-role boards, may be absolutely immune. See Reed v. Vill. of Shorewood, 704 F.2d 943, 951-54 (7th Cir. 1983); D'Agostino v. N.Y. State Liquor Auth., 913 F. Supp. 757, 767-69 & n.5 (W.D.N.Y.), aff'd, 104 F.3d 351 (2d Cir. 1996) (unpublished); cf. Brown v. DeBruhl, 468 F. Supp. 513, 520 (D.S.C. 1979) (finding absolutely immune sheriff with "dual status of a quasi-prosecutor and [] a witness"). Consistent with these decisions, we hold that a government official's dual status as one who performs both adjudicatory and prosecutorial functions does not deprive him of an otherwise applicable immunity defense.

Finally, the plaintiff contends that our prior cases are distinguishable because the Secretary "delegated the adjudicative function and power to lawyers who have attorney-relationships with the agency's prosecutorial arm" and, thus, suffered from conflicts of interest. This is whistling past the graveyard: the plaintiff's contention overlooks that "[t]he Supreme Court has established that an accusation of a conflict of interest does not trump a claim of absolute immunity." Guttman v. Khalsa, 446 F.3d 1027, 1033-34 (10th Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9, 11 (1991)).

-18-

As a fallback, the plaintiff insists that absolute immunity cannot shield the Secretary's dual roles because checks and balances, which would otherwise prevent abuses in administrative enforcement actions, are lacking. In his view, the Secretary's dual-role status is, in itself, a corruption of any safeguards that otherwise attend administrative enforcement proceedings. In support, he notes that Butz (the seminal case applying absolute immunity to administrators) was premised in part on safeguards found in the Administrative Procedure Act (APA), e.g., 5 U.S.C. § 554. See 438 U.S. at 513-14.

This thesis does not hold water. While the Butz Court did discuss the evolution of the APA in laying the historical groundwork for its holdings on immunity, see, e.g., id., safeguards identical to those contained in the APA are "not necessary preconditions to claiming absolute immunity," Knowlton v. Shaw, 704 F.3d 1, 9 (1st Cir. 2013) (internal quotation marks omitted).

In all events, even in a dual-role setting the safeguards in place here are consistent with the kind of safeguards that should accompany the availability of absolute immunity. Cf. Silvia v. Secs. Div., 810 N.E.2d 825, 834 (Mass. App. Ct. 2004) (upholding the Securities Division enforcement mechanism and observing that "it is commonplace in administrative practice that cases prosecuted by an agency's enforcement section are decided by that agency's adjudicators, be they the individual or board who head the agency

or a separate hearings section").  Typically, such safeguards are drawn from a menu of items that include the right to be represented by counsel, access to a transcribed record, the right to present witnesses and documentary evidence, the right to cross-examine, a written final opinion guided by precedents, and the availability of judicial review.  See Butz, 438 U.S. at 512; Bettencourt, 904 F.2d at 783.

The plaintiff had the benefit of all of these safeguards in the administrative proceeding here.  He received fair notice of the proceeding and the charges against him.  See Mass. Gen. Laws ch. 30A, § 11(1).  A record was kept.  See id. § 11(6); 950 Mass. Code Regs. § 10.09(m), (o).  Evidence was taken and vetted.  See Mass. Gen. Laws ch. 30A, § 11(2), (4); 950 Mass. Code Regs. § 10.09(h), (i).  The plaintiff had the right to representation by an attorney.  950 Mass. Code Regs. § 10.03(a).  He had the right both to call witnesses and to submit rebuttal evidence.  Mass. Gen. Laws ch. 30A, § 11(3).  He had the right to cross-examine.  Id.; 950 Mass. Code Regs. § 10.09(h)(1).  The proceeding culminated in a reasoned decision, see Mass. Gen. Laws ch. 30A, § 11(8); 950 Mass. Code Regs. § 10.09(p), subject to a right to judicial review, Mass. Gen. Laws ch. 30A, § 14; id. ch. 110A, § 411(a).  In short, the process was adversarial.

At first blush, this panoply of safeguards seems adequate.  The plaintiff, however, challenges this conclusion on

the basis of the Secretary's status as an elected official. We think that this emphasis is misplaced.

To be sure, the Butz Court noted that insulation from political pressures is a factor to be considered in measuring the adequacy of available safeguards. See 438 U.S. at 512-13. But neither Butz nor any other decision of which we are aware stands for the proposition that elected status, without more, requires heightened safeguards. The case law suggests the opposite. See, e.g., Keystone Redev. Partners, LLC v. Decker, 631 F.3d 89, 98 & n.4 (3d Cir. 2011); Miller v. Davis, 521 F.3d 1142, 1145 (9th Cir. 2008); Brown v. Griesenauer, 970 F.2d 431, 439 (8th Cir. 1992).

For present purposes, it suffices to say that the elected status of an official who performs judicial or prosecutorial functions is a factor to be considered in weighing the adequacy of safeguards. See Butz, 438 U.S. at 512-14. But elected status, without more, is not a trump card that cancels out an otherwise applicable immunity.[3]

To say more on the immunity issues would be to paint the lily.[4] As material here, some of the Secretary's functions are

---

[3] We note that election of judges is commonplace among the fifty states and, were the law cast as the plaintiff envisions it, an elected judge would never receive absolute immunity. See Keystone Redev. Partners, 631 F.3d at 98 n.4.

[4] The plaintiff has contrived a golconda of other arguments, not specifically addressed here, as to why absolute immunity does not attach. None of these arguments has merit and we reject them out of hand.

judicial; some are prosecutorial.  Notwithstanding his dual roles, he is — with one exception — entitled to absolute immunity from the plaintiff's suit.  We turn next to that exception.

## IV.  THE STATEMENT

There is one loose end: the plaintiff complains of an allegedly retaliatory act that is not within the scope of either judicial or prosecutorial immunity, specifically, the use of the plaintiff's name in the public announcement of the enforcement proceeding on the Secretary's website.  The district court disposed of this claim on the basis of qualified immunity.  See Goldstein, 2012 WL 4481206, at *3.  We choose instead to meet it head-on.  See Coggeshall, 604 F.3d at 662 (explaining that the court of appeals may affirm an order of dismissal on any ground made manifest by the record).

To state a claim for relief, a section 1983 complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). While a complaint need not include detailed factual allegations, it "must contain sufficient factual matter to state a claim to relief that is plausible on its face."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (internal quotation marks omitted); see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Assessing the sufficiency of a pleading entails a two-step analysis. "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013). "Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." Id. If this factual residue is "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," the complaint may be dismissed. Tambone, 597 F.3d at 442.

"Government actors offend the First Amendment when they retaliate against an individual for constitutionally protected speech." González-Droz v. González-Colón, 660 F.3d 1, 16 (1st Cir. 2011). To make out a First Amendment retaliation claim, the plaintiff must show that his conduct was in fact constitutionally protected. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Powell, 391 F.3d at 17. Then, he must adduce "proof of a causal connection between the allegedly protected speech and the allegedly retaliatory response." González-Droz, 660 F.3d at 16. Causation is established by showing that the plaintiff's conduct was a "substantial" or "motivating" factor in bringing about the allegedly retaliatory action. Mt. Healthy, 429 U.S. at 287 (internal quotation marks omitted).

-23-

In this instance, the alleged retaliatory act is itself in the form of government speech — the Secretary's use of the plaintiff's name in a website announcement. Courts have not been receptive to retaliation claims arising out of government speech. See, e.g., Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 417 (4th Cir. 2006) ("When the challenged government action is government speech, there is no retaliation liability — even if the plaintiff can demonstrate a substantial adverse impact — unless the government speech concerns 'private information about an individual' or unless it was 'threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow.'" (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 689 (4th Cir. 2000))); Benningfield v. City of Houston, 157 F.3d 369, 376-77 (5th Cir. 1998) (explaining that government speech in the form of "mere accusations" of wrongdoing and "mere criticisms" does not amount to adverse employment action for retaliation purposes). This cautious approach to limiting government speech is warranted. Not only do public officials have free speech rights, but they also have an obligation to speak out about matters of public concern.

In his amended complaint, the plaintiff alleges that the Secretary "issued a public announcement which singled out [the plaintiff] (and no other individual respondent) by name." He says that this action departed from the Secretary's "custom and usual

practice when issuing a public announcement of the filing of an administrative complaint" under which he does not normally "identify any individual respondent by name."

The crucial question is whether, under these circumstances, the inclusion of the plaintiff's name in the announcement can ground a claim of unconstitutional retaliation. We think not.

It is clear beyond hope of contradiction that the inclusion of the plaintiff's name in a run-of-the-mill website announcement did not sink to the level of actionable retaliatory conduct. The plaintiff does not contend that the website announcement was false or misleading, nor that it divulged confidential information; he takes issue only with the use of his name. And even if the Secretary chose to include the plaintiff's name in the announcement because he bore him a grudge — a matter on which we take no view — that would not be enough to state a plausible claim of unconstitutional retaliation. "[A] public official's malicious intent, taken alone, cannot amount to a retaliatory response." Balt. Sun, 437 F.3d at 420. There must be actual "adverse conduct or speech." Id. (emphasis in original); accord Scott v. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003); Suarez Corp., 202 F.3d at 685-86. Allowing a plaintiff to weave a First Amendment retaliation claim out of something so mundane as a government official's issuance of a true statement, not couched in

-25-

inflammatory terms, about a matter of public concern would trivialize the Constitution.[5]

That ties up this loose end. The plaintiff has not pleaded a plausible claim for unconstitutional retaliation based on the website announcement. Consequently, the district court did not err in dismissing this claim.

## V.  CONCLUSION

We need go no further. For the reasons elucidated above, we affirm the judgment of the district court.

**Affirmed.**

---

[5] Cf. G.F. Northall, Folk-Phrases of Four Counties 23 (1894) ("Sticks and stones will break my bones, but names will never hurt me.").