March 30, 2020

**Supreme Court**

No. 2018-207-Appeal.
(PC 14-4918)

| | |
|---|---|
| Joseph and Anggita Diorio | : |
| v. | : |
| Hines Road, LLC, et al. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2018-207-Appeal.
(PC 14-4918)

Joseph and Anggita Diorio :

v. :

Hines Road, LLC, et al. :

Present: Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.** The plaintiffs, Joseph Diorio and Anggita Diorio (the Diorios), appeal from a June 6, 2018 final judgment of the Providence County Superior Court entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. That judgment was in favor of defendants Thomas Hefner, Esq., in his capacity as Solicitor for the Town of Cumberland (Solicitor Hefner); Neil Hall, in his capacity as the Building and Zoning Official for the Town of Cumberland (Building Official Hall); and the Town of Cumberland (the Town) (collectively the Town defendants).[1] The entry of final judgment followed the grant of the Town defendants' motion for summary judgment based on the ground of prosecutorial immunity.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After considering the written and oral submissions of the parties, and after a thorough review of the record, we are of the opinion that cause has not been shown and that the appeal may be resolved at this time without further briefing or argument.

---

1 For the purposes of the appeal before us, we are concerned with only the Town defendants. The plaintiffs' case against the other defendants in this action—Hines Road, LLC and Robert Geddes d/b/a Byron Devcomm, Inc.—remains pending in the Superior Court.

For the reasons set forth in this opinion, we affirm in part and vacate in part the judgment of the Superior Court.

# I

## Facts and Travel

### A

### Background Facts

In relating the basic facts, we rely on: this Court's previous decision in this case, *Hines Road, LLC v. Hall*, 113 A.3d 924 (R.I. 2015) (*Hines I*); the hearing justice's bench decision; and various documents in the record.

At all times relevant to this case, plaintiffs lived at 21 Georgiana Drive in Cumberland, Cumberland Tax Assessor's Plat No. 49, Lot No. 56 (the Diorio property). Hines Road, LLC (Hines) owned the abutting property, 138 Wrentham Road, Cumberland Assessor's Plat No. 49, Lot No. 57 (the Hines property).[2] The complaint in this case averred that, in 2006, Hines built a retaining wall on its property in close proximity to the property line that it shared with the Diorios. The complaint went on to allege that the wall was fifteen feet high and had been built:

---

[2] It was made clear to this Court in the memoranda filed pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure that the Diorios no longer own 21 Georgiana Drive. It was likewise represented at oral argument before this Court that Hines no longer owns 138 Wrentham Road. However, given the fact that it was also represented at oral argument that the damages being sought include damage to the Diorio property and the diminution in property value allegedly caused by Hines's actions, the Diorios still have standing to proceed with this action, and we will address their arguments on appeal. *See Warfel v. Town of New Shoreham*, 178 A.3d 988, 991 (R.I. 2018) ("At its core, inquiries into standing consider whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to ensure concrete adverseness that sharpens the presentation of the issues * * *. * * * The party asserting standing must have an injury in fact that is (a) concrete and particularized * * * and (b) actual or imminent, not conjectural or hypothetical.") (internal quotation marks omitted). That being said, we note that the trial justice may find that the sought-for injunctive relief is no longer available.

.

(1) without "a required soil erosion and sedimentation control plan;" (2) "without a required performance bond;" (3) "in violation of Town performance principles and guidelines for new developments;" (4) "without a state building permit;" and (5) "in violation of State Building Codes." The Town defendants contend that the wall was built without the knowledge of the Town.

In 2008, the Town cited Hines with respect to the retaining wall, stating that the retaining wall "present[ed] a hazard to the general public" and ordering its removal. Subsequently, in March of 2010, Building Official Hall issued to Hines a "Notice for Violation of Building Code * * * and or Cumberland Zoning Ordinance" (Notice of Violation) for failure to comply with the Rhode Island State Building Code and the Cumberland Code of Ordinances. A Stop-Work Order was also issued at that time. Moreover, the complaint averred that Building Official Hall ordered Hines to remove the wall. In September of 2010, Building Official Hall issued another Notice of Violation, which again ordered Hines to remove the retaining wall. Thereafter, on March 31, 2011, the Town entered into a written agreement with Hines, in which Hines agreed to bury the wall according to an approved soil erosion and sedimentation control plan and permit by July 31, 2011.

According to the complaint in the case before us, Hines did not bury the wall by the date set forth in its written agreement with the Town. On July 13, 2012, Building Official Hall issued yet another Notice of Violation to Hines, expressly indicating that, if Hines did not remove the "unsafe wall," the Town would have it removed and would place a lien on Hines's property in the land evidence records. There was then ongoing communication between Hines and the Town, in the course of which Building Official Hall continued to insist that the wall be taken down. The complaint contends that, throughout the Summer of 2012, despite the July 13, 2012

Notice of Violation instructing Hines to remove the wall, Hines proceeded instead to cover the retaining wall with soil, gravel, loam, and grass seed in accordance with the March 31, 2011 agreement between Hines and the Town—thus creating an earthen slope. According to the trial justice's decision, in October of 2012, Building Official Hall issued yet another Notice of Violation to Hines. Subsequently, in November of 2012, Hines filed a complaint in Providence County Superior Court seeking to litigate issues relating to the March 31, 2011 agreement between Hines and the Town.[3] The Diorios moved to intervene in the Superior Court action, but their motion was denied. They appealed that denial to this Court in *Hines I*, and we affirmed the denial of their motion to intervene. *Hines I*, 113 A.3d at 931.

In the action brought against the Town by Hines, the Superior Court ultimately issued an order on October 14, 2015 granting Hines's motion for summary judgment on the count in its complaint seeking declaratory judgment and declaring that Hines had "complied with the terms of the Settlement Agreement with the Town dated March 31, 2011 and all terms and conditions therein, and the work completed by [Hines] on the retaining wall [was] in compliance with all state and local laws and regulations."

Meanwhile, the Diorios filed this action on October 7, 2014 against Hines, Robert Geddes d/b/a Byron Devcomm, Inc., and the Town defendants. The complaint in this case included the following counts: (1) Count One for declaratory judgment and injunctive relief; (2) Count Two for negligence; (3) Count Three for private nuisance; (4) Count Four for trespass;

---

[3] In November of 2012, Hines sought a temporary restraining order against the Town and Town officials which would preclude those defendants from "taking any legal or other action as against [Hines] or the property that the entity owns located at 138 Wrentham Road, Cumberland, Rhode Island, and/or in regard to that property * * *." The Superior Court granted Hines's motion.

and (5) Count Five for intentional infliction of emotional distress. All counts were directed at all defendants.

Ultimately, on May 1, 2017, the Town defendants filed a motion for summary judgment alleging that they were immune from suit under the doctrine of prosecutorial immunity.[4] A hearing on that motion was held on November 7, 2017. The hearing justice issued a bench decision on December 4, 2017, granting the Town defendants' motion for summary judgment. We relate below the salient aspects of that decision.

**B**

**The Decision of the Hearing Justice**

The hearing justice began her decision by explaining that prosecutorial immunity provides "immunity to prosecutors" with respect to "their decision-making process whether to bring cases or not bring cases, how to proceed," which is an "extension of * * * quasi-judicial immunity * * *." She noted that said immunity exists not necessarily "for the protection or benefit of a malicious or corrupt prosecutor, but rather is for the benefit of the public, whose interest it is that the prosecutors should be at liberty to exercise their functions with independence and without fear of consequences."

The hearing justice first addressed Solicitor Hefner. She stated that it was "clear" to her that he was "immune from liability because he [was] a prosecutor." She added that "[i]ndeed, it

---

[4] Several other motions for summary judgment were filed in this case, including a motion for summary judgment filed by the Diorios against the Town defendants with respect to Counts One and Two in the complaint, which motion was denied.

We note that, in their Rule 12A statement, the Diorios state that they are appealing both the grant of the Town defendants' motion for summary judgment below and the denial of their own motion for summary judgment as to the Town defendants. However, they focus solely on the Town defendants' motion for summary judgment on appeal and so shall we.

For the purposes of this appeal, we need not concern ourselves with any of the other motions for summary judgment filed in this case.

was [Solicitor] Hefner's job to initiate an action that he deemed appropriate in Rhode Island Superior Court to compel compliance with the numerous Town-issued notices of an unsafe structure." She opined that that was the "textbook definition * * * of what prosecutorial immunity is meant for."

However, with respect to the status of Building Official Hall, the hearing justice found it to be a "harder issue * * *." She stated that she did not initially see how Building Official Hall carried out prosecutorial functions such that he would be protected by prosecutorial immunity. However, she went on to further state that, after listening to the parties and examining legal authorities, she had come to the conclusion that "the [c]ourt is instructed to look at the nature of the function being performed and not the official title that someone holds." She proceeded to state that "what's really being argued is a failure to enforce the violations that were issued." For that reason, it was her determination that prosecutorial immunity was applicable to Building Official Hall in this case.

With respect to the Town, the hearing justice stated that "a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office." She thus held that, because Solicitor Hefner and Building Official Hall had been sued in their official capacities, their immunity extended to the Town as well.

Lastly, the hearing justice addressed the applicability of G.L. 1956 § 23-27.3-124.5,[5] which had been relied upon by the Diorios. The Diorios argued that that statutory section

---

[5] General Laws 1956 § 23-27.3-124.5 provides, in pertinent part, as follows:

> "When an owner or the owner's authorized agent has been served with a notice of an unsafe condition and fails to comply with the order to either make the building, sign, or structure safe or to have it demolished within a stipulated time and has not appealed the order to the local board of appeals within the thirty (30) days

imposed a mandatory duty on Solicitor Hefner to bring a Superior Court action when a structure is deemed unsafe. The hearing justice noted that she did consider the statutory scheme when reaching her conclusions in this case, but that, once it was determined that the Town defendants could avail themselves of prosecutorial immunity, she did not think that "those [statutory] provisions and their mandatory nature would necessarily change [her] conclusion * * *."

An order entered granting summary judgment for the Town defendants on March 2, 2018. Final judgment pursuant to Rule 54(b) was subsequently entered on June 6, 2018 in favor of the Town defendants. The plaintiffs filed a timely notice of appeal.

## II

## Issue Raised on Appeal

The issue with which this Court is confronted is: whether or not the hearing justice erred in applying prosecutorial immunity to Solicitor Hefner, Building Official Hall, and the Town of Cumberland?

## III

## Standard of Review

This Court reviews a grant of summary judgment in a *de novo* manner. *Rhode Island Industrial-Recreational Building Authority v. Capco Endurance, LLC*, 203 A.3d 494, 499 (R.I. 2019). In so doing, we employ "the same standards and rules used by the hearing justice."

---

> required, the legal counsel of the municipality shall be advised and shall institute the appropriation action to compel compliance as provided in § 23-27.3-122.0. If in the opinion of the building official the condition poses an immediate danger to the public health, safety, and welfare, the building official shall cause all the necessary work to be done to either make the building, sign, or structure safe or to have it demolished. The cost of the work shall be billed to the owner and shall be a lien against the real property as provided in § 23-27.3-125.7."

*Cancel v. City of Providence*, 187 A.3d 347, 349 (R.I. 2018) (internal quotation marks omitted). This Court "will affirm a [trial] court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016) (internal quotation marks omitted). "[T]he nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (internal quotation marks omitted). In addition, "[s]ummary judgment should enter against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *." *Cancel*, 187 A.3d at 350 (internal quotation marks omitted).

## IV

## Analysis

The Diorios contend on appeal that the Superior Court "overlooked the fact-based inquiry required for analyzing prosecutorial immunity, and instead improperly relied upon select allegations in the complaint * * *." They argue that the Superior Court "overlooked or ignored important, *undisputed* facts, affidavits, documents, and argument * * *." (Emphasis in original.) They further allege that the Superior Court applied "the wrong standard of review" and did not view the evidence in the light most favorable to the non-moving plaintiffs.

In addressing the Diorios' contentions on appeal, we begin by looking to the law governing immunity.

As the United States Court of Appeals for the First Circuit has stated, "Immunities come in various shapes and sizes." *Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013). However, in

this action, we are concerned solely with the doctrine of prosecutorial immunity.[6] "The baseline rule [as to prosecutorial immunity] is that a state official who performs prosecutorial functions * * * is absolutely immune from damages actions." *Id.* at 26. The "absolute immunity" at issue in this case "applies to a narrow swath of public officials, including judges performing judicial acts within their jurisdiction, *prosecutors performing acts intimately associated with the judicial phase of the criminal process*, *and agency officials with functions similar to judges and/or prosecutors*." *Id.* at 24 (emphasis added) (internal quotation marks omitted); *see Burns v. Reed*, 500 U.S. 478, 486 (1991). The protection provided by an absolute immunity "endures even if the official acted maliciously and corruptly in exercising his judicial or prosecutorial functions."[7] *Goldstein*, 719 F.3d at 24 (internal quotation marks omitted); *see also Wang v. New Hampshire Board of Registration in Medicine*, 55 F.3d 698, 702 (1st Cir. 1995). We note that "[a]lthough this concept of absolute immunity allows some abuses of official power to go unredressed, it is necessary for the effective administration of government that government workers be able to perform their jobs without fear of liability."[8] *Id.* (internal

---

[6] We pause to note that, for the purposes of this appeal, we are not concerned with the applicability *vel non* of the public duty doctrine. *See Morales v. Town of Johnston*, 895 A.2d 721, 730 (R.I. 2006) ("The public duty doctrine shields the state and its political subdivisions from tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons.") (internal quotation marks omitted). That issue was not decided by the hearing justice. What is more, counsel for the Town defendants stated at the hearing on the motions for summary judgment that the Town defendants had opted not to argue the public duty doctrine in their motion for summary judgment.

[7] We note that absolute immunity "defeats a suit at the outset * * *." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976).

[8] The policy which forms the basis of absolute immunity for prosecutors was articulated with particular eloquence by Judge Learned Hand:

> "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should

quotation marks omitted); *see also Calhoun v. City of Providence*, 120 R.I. 619, 631, 390 A.2d 350, 356 (1978). However, the United States Supreme Court has stated that it has been "quite sparing" in its recognition of absolute immunity and will not "extend it any further than its justification would warrant." *Burns*, 500 U.S. at 487 (internal quotation marks omitted).

Our case law clearly indicates that the doctrine of prosecutorial immunity remains "alive and well" in Rhode Island. *Bandoni v. State*, 715 A.2d 580, 595 (R.I. 1998); *see also Beaudoin v. Levesque*, 697 A.2d 1065, 1068 (R.I. 1997) (applying absolute immunity to a prosecutor); *Suitor v. Nugent*, 98 R.I. 56, 61, 199 A.2d 722, 724 (1964) (applying to the attorney general the immunity accorded to judicial officers). What is more, absolute immunity can be extended beyond a prosecutor to the functions of an official that are similar to those of a prosecutor. *Goldstein*, 719 F.3d at 24; *see Butz v. Economou*, 438 U.S. 478, 515 (1978); *cf. Richardson v. Rhode Island Department of Education*, 947 A.2d 253, 257 (R.I. 2008) (holding that "quasi-

---

not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949); *see also Burns v. Reed*, 500 U.S. 478, 484 (1991).

judicial immunity attaches to agents of the state who perform an official function comparable to that of a trial judge, not just members of the judiciary") (internal quotation marks omitted); *Maynard v. Beck*, 741 A.2d 866, 870 (R.I. 1999) (holding that "the doctrine of legislative immunity is not reserved solely for legislators, and that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions") (internal quotation marks omitted).

In determining whether an individual is entitled to prosecutorial immunity we look to the "nature of the function performed" by the official at issue. *Richardson*, 947 A.2d at 257 (internal quotation marks omitted); *see also Goldstein*, 719 F.3d at 24. We are not concerned with the identity of the actor who performed the function but rather we are concerned with whether or not the act had a "functional tie to the judicial process * * *." *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993); *see Forrester v. White*, 484 U.S. 219, 229 (1988); *see also Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000). Additionally, "[t]he immunity-seeker must carry the devoir of persuasion to show that an immunity applies." *Goldstein*, 719 F.3d at 24; *see also Burns*, 500 U.S. at 486. "That burden is a heavy one." *Penate v. Kaczmarek*, 928 F.3d 128, 135 (1st Cir. 2019). It requires a showing that "absolute immunity should attach to each act * * * allegedly committed that gave rise to a cause of action." *Light v. Haws*, 472 F.3d 74, 79, 80 (3d Cir. 2007) (noting the necessity of a "meticulous analysis" of the official's actions and functions before a determination could be made that absolute immunity would attach).

**A**

**Solicitor Hefner**

After a careful review of the record before us and the contentions made by the parties on appeal, it is clear to this Court that there are no material facts that remain in dispute with respect

to the functions performed by Solicitor Hefner in this case. What is more, we are in hearty agreement with the hearing justice that the issue of whether or not Solicitor Hefner is entitled to prosecutorial immunity is clear. Solicitor Hefner's function in this case was certainly similar to that of a prosecutor—he was tasked with determining what the appropriate action was in attempting to ensure compliance with the Notices of Violation that had been issued to Hines. *See Richardson*, 947 A.2d at 257; *see also Butz*, 438 U.S. at 515 (stating that an agency official's decision to initiate administrative proceedings was analogous to the function of a prosecutor). Essentially, Solicitor Hefner's function was to determine, in his capacity as advocate for the Town, whether or not to prosecute Hines in Superior Court and to decide how to handle the case which Hines filed against the Town in Superior Court. Thus, Solicitor Hefner's function at issue in this case, even when the facts are taken in the light most favorable to plaintiffs as the non-moving parties, was clearly "intimately associated with the judicial phase" of the enforcement of the Notices of Violation. *Goldstein*, 719 F.3d at 24. For that reason, we are led to the ineluctable conclusion that Solicitor Hefner is covered by prosecutorial immunity in this case. *See Dohaish v. Tooley*, 670 F.2d 934, 938 (10th Cir. 1982) ("A decision not to prosecute is a decision which is protected by [prosecutorial] immunity.").

We pause, however, to consider the Diorios' statutory argument. The Diorios contend, as they did in Superior Court, that Solicitor Hefner is not entitled to prosecutorial immunity because he was tasked with carrying out functions which the Diorios consider to be "non-discretionary" and mandatory pursuant to § 23-27.3-124.5. Specifically, the Diorios claim that that statutory section made it mandatory for Solicitor Hefner to "bring an action to compel compliance with [the Town's] notices of violation citing an unsafe structure."

It will be recalled that § 23-27.3-124.5 provides, in pertinent part, as follows:

> "When an owner or the owner's authorized agent has been served with a notice of an unsafe condition and fails to comply with the order to either make the building, sign, or structure safe or to have it demolished within a stipulated time and has not appealed the order to the local board of appeals within the thirty (30) days required, the *legal counsel of the municipality shall be advised and shall institute the appropriation action to compel compliance* as provided in § 23-27.3-122.0."[9] (Emphasis added.)

We begin by noting that the statute states that legal counsel "shall institute the *appropriation* action * * *." Section 23-27.3-124.5 (emphasis added). It is patently clear in this context that the use of the word "appropriation" is a scrivener's error[10] and should in fact read "appropriate." We will apply it accordingly to effectuate the intent of the General Assembly. *See In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 504 (R.I. 2011) ("To ascertain a statute's meaning, we are mindful that our ultimate goal is to give effect to the General Assembly's intent.") (internal quotation marks omitted).

The requirement to institute an "appropriate action" clearly leaves some discretion in the town solicitor to determine what is and is not an appropriate action. We are further of the opinion that a town solicitor is vested with discretion to determine, at the very least, the timing of the filing of a Superior Court action. For the above-stated reasons, it is clear to this Court that the statute at issue does not necessarily *mandate* the immediate filing of a court action.

In conclusion, in the judgment of this Court, there are no material facts which remain in dispute as to Solicitor Hefner, and he is protected from suit in this case by the doctrine of

---

9 We note that G.L. 1956 § 23-27.3-122.0 contains no text.

10 "[A] scrivener's error is a case in which the words of a legislative text diverge from what Congress *meant* to say. * * * Or, to use Justice Scalia's gloss, a scrivener's error is a mistake of expression, as opposed to a lapse of legislative wisdom." Ryan D. Doerfler, *The Scrivener's Error*, 110 Nw. U. L. Rev. 811, 816 (2016) (internal quotation marks omitted).

prosecutorial immunity. Accordingly, we perceive no error in the hearing justice's grant of summary judgment as to Solicitor Hefner.

**B**

**Building Official Hall**

The Diorios aver on appeal that many of Building Official Hall's duties, which are described at length in the Diorios' motion for summary judgment against the Town defendants, were administrative and non-discretionary. They state that Building Official Hall "failed to take actions to secure the safety of the [retaining wall or earthen slope], such as by performing the requisite inspections to verify its stability and safety following its last modification" or by having it removed.

As we have previously indicated, in determining the applicability of the doctrine of prosecutorial immunity, we must look not to the position held by a particular official—a Town Building and Zoning Official in this instance—but rather to the *nature of the functions* he or she performed which are at issue in the case. *See Buckley*, 509 U.S. at 277; *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976); *Richardson*, 947 A.2d at 257. We have conducted a detailed review of the record and the arguments of the parties on appeal, and we conclude that, under the facts of this particular case, we know of no function performed by Building Official Hall that could reasonably be categorized as prosecutorial in nature.

We have considered, at length, the facts alleged as to Building Official Hall in the Diorios' complaint, as well as their memorandum in support of their motion for summary judgment. In so doing, we have assessed each and every function of Building Official Hall at issue in this case. However, we do not deem it necessary to parse each and every function in this opinion. Rather, we will discuss the allegations against Building Official Hall more generally.

Those allegations are focused on his issuance of Notices of Violation and, more importantly, his alleged failure to enforce those notices as well as various Town ordinances with respect to the retaining wall at issue. In our opinion, none of his actions, or inactions, show a "functional tie to the judicial process * * *." *Buckley*, 509 U.S. at 277. Even if the functions at issue may be deemed to deal with enforcement, that alone does not show the necessary functional tie to a judicial or quasi-judicial responsibility that is part and parcel of prosecutorial immunity. *See id.* Building Official Hall bore the burden of proof as to prosecutorial immunity. *See Goldstein*, 719 F.3d at 24. In our judgment, he has not met that heavy burden under the specific facts of this case. *See Penate*, 928 F.3d at 135.

Accordingly, it is our view that the hearing justice erred in holding, on this record, that Building Official Hall was entitled to prosecutorial immunity and in granting the Town defendants' motion for summary judgment with respect to the claims against him.

**C**

**The Town of Cumberland**

In addressing the case as it pertains to the Town, we would like to begin with the applicability of G.L. 1956 § 45-15-5. That statutory section reads as follows:

> "Every person who has any money due him or her from any town or city, or any claim or demand against any town or city, for any matter, cause, or thing whatsoever, shall take the following method to obtain what is due: The person shall present to the town council of the town, or to the city council of the city, a particular account of that person's claim, debt, damages, or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made to him or her by the town or city treasurer of the town or city within forty (40) days after the presentment of the claim, debt, damages, or demand, the person may commence his or her action *against the treasurer for the recovery of the complaint*." Section 45-15-5 (emphasis added).

In its answer to the Diorios' complaint, the Town stated, as an affirmative defense, that "[p]laintiffs have failed to comply with the requirements of R.I.G.L. § 45-15-5." We need not discuss whether or not the Diorios complied with the presentment requirement mentioned in § 45-15-5 because it appears that they did not comply with its dictate that the action must be filed against the treasurer, not the Town.

Counts Two through Five of the Diorios' complaint—for negligence, private nuisance, trespass, and intentional infliction of emotional distress respectively—are monetary claims and, in the opinion of this Court, are strictly governed by § 45-15-5 in this action. *See United Lending Corp. v. City of Providence*, 827 A.2d 626, 632 (R.I. 2003) (stating that "generally * * * monetary claims against municipalities" are "strictly governed" by § 45-15-5). As such, and given the Diorios' failure to name the town treasurer, those four counts are amenable to abatement and dismissal by the trial justice.[11] *See id.* at 633 ("When an action, filed within the statute-of-limitations period, is considered prematurely brought for failure to comply with the presentment provisions of § 45-15-5, summary judgment is inappropriate because it is a final adjudication of the claim[;] [u]nder these circumstances, the complaint is subject to abatement or dismissal, not final judgment."); *see also Serpa v. Amaral*, 635 A.2d 1196, 1199 (R.I. 1994).[12]

---

[11] That being said, after considering our precedent, it is unlikely that Count One of the Diorios' complaint seeking a declaratory judgment and injunctive relief is amenable to abatement and dismissal by the trial justice pursuant to G.L. 1956 § 45-15-5. This Court has stated that "in general, equitable actions do not fall within the purview of § 45-15-5." *United Lending Corp. v. City of Providence*, 827 A.2d 626, 632 (R.I. 2003); *see Town of Johnston v. Ryan*, 485 A.2d 1248, 1250 (R.I. 1984); *Lonsdale Co. v. Woonsocket*, 25 R.I. 428, 443, 56 A. 448, 454 (1903). We have also held that "a claim such as one for a declaration of rights and liabilities" is not subject to § 45-15-5. *State v. Eight Cities and Towns*, 571 A.2d 27, 29 (R.I. 1990).

[12] We note that, "[p]ursuant to G.L. 1956 § 9-1-22, * * * [a] plaintiff is allowed one year from the date of the termination of the action to comply with § 45-15-5 and file another lawsuit." *United Lending Corp.*, 827 A.2d at 633.

Due to the fact that we are vacating the decision of the Superior Court with respect to Building Official Hall, who was named in his official capacity, and in view of the potential abatement and dismissal of Counts Two through Five, we vacate the summary judgment decision of the Superior Court with respect to the Town. *Cf. Psilopoulos v. State*, 636 A.2d 727, 728 (R.I. 1994) (relying on *Butz*, 438 U.S. at 478, in addition to other cases, for the proposition that a quasi-judicial determination is "entitled to immunity on the part of the agents as well as the sovereign entity that employed them"); *Calhoun*, 120 R.I. at 632, 390 A.2d at 356 ("While immunizing officials from personal liability is, of course, a separate concept from governmental immunity, * * * substantial public policies necessitate that even when the state is the defendant, recovery should be denied the injured party.").

In conclusion, we affirm the grant of the Town defendants' motion for summary judgment with respect to the claims against Solicitor Hefner, but we vacate the judgment with respect to the claims against Building Official Hall and the Town.

## V

## Conclusion

For the reasons set forth herein, we affirm in part and vacate in part the judgment of the Superior Court. We remand the record to that tribunal.

Justice Flaherty attended oral argument but did not participate in the deliberations or in the decision of this case.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Joseph and Anggita Diorio v. Hines Road, LLC, et al. |
| **Case Number** | No. 2018-207-Appeal.<br>(PC 14-4918) |
| **Date Opinion Filed** | March 30, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Maureen B. Keough |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Jennifer R. Cervenka, Esq.<br>Paul Kessimian, Esq.<br>Emily J. Migliaccio, Esq. |
| | For Defendants:<br><br>Kathleen M. Daniels, Esq.<br>Michael A. DeSisto, Esq.<br>Michael A. Kelly, Esq.<br>Andrew G. Blais Esq.<br>Kelley N. Morris, Esq. |