# United States Court of Appeals
## For the First Circuit

No. 09-1111

JOSEPH COGGESHALL AND L. LYNN LESUEUR,

Plaintiffs, Appellants,

v.

MASSACHUSETTS BOARD OF REGISTRATION OF PSYCHOLOGISTS ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lipez, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

Robert S. Wolfe, with whom Robert Wolfe Associates, P.C. was on brief, for appellants.
Amy Spector, Assistant Attorney General, Commonwealth of Massachusetts, with whom Martha Coakley, Attorney General, was on brief, for appellees.

May 17, 2010

* Hon. David H. Souter, Associate Justice (Ret.), of the Supreme Court of the United States, sitting by designation.

**SELYA**, <u>Circuit Judge</u>. This appeal compels us to weave a decisional tapestry from several doctrinal strands that help define the margins of federal-court jurisdiction, including Eleventh Amendment immunity, abstention, and standing. The appellants (a psychologist and a third party) challenge a state administrative proceeding that resulted in the imposition of professional discipline against the psychologist. The district court determined that it could not grant relief on any of the myriad claims presented and, accordingly, dismissed the action. After careful consideration, we affirm.

## I.  BACKGROUND

Dr. L. Lynn LeSueur is a psychologist licensed to practice in Massachusetts. When a seven-year-old boy who was enrolled in an elementary school in Norfolk, Massachusetts, began to experience behavioral problems, the school retained Dr. LeSueur to evaluate him. Dr. LeSueur examined the child and interviewed several people at the school. She then prepared and submitted a written report.[1]

Some family background helps to explain the etiology of this litigation. The child whom Dr. LeSueur had examined came from

---

[1] The report was not made part of the record before the district court. The appellants — Dr. LeSueur and the boy's father, Joseph Coggeshall — attempted to supplement the record on appeal, but that attempt was rebuffed. <u>Coggeshall</u> v. <u>Mass. Bd. of Regist. of Psychologists</u>, No. 09-1111 (1st Cir. May 22, 2009) (unpublished order).

a broken home.  When his parents divorced, the court awarded custody to his mother and granted his father visitation rights.  The parents' post-divorce relationship was incendiary.  Dr. LeSueur's report added fuel to the fire: upon reviewing it, the boy's mother lodged a complaint against Dr. LeSueur with the Massachusetts Board of Registration of Psychologists (the Board).

The Board is the licensing and regulatory authority for psychologists in Massachusetts.  See Mass. Gen. Laws ch. 112, §§ 118-129B.  After receiving the complaint, it held a formal adjudicatory hearing.  See id. ch. 30A, §§ 10-11.  In due course, it circulated a tentative decision, to which Dr. LeSueur objected.

The Board considered this objection and issued its final decision on September 16, 2005.  In substance, the Board determined that Dr. LeSueur had exceeded the scope of her competence in compiling the report (which contained, among other things, recommendations pertaining to custody arrangements and to a restraining order that the boy's mother had obtained against his father).  In reaching this conclusion, the Board found that Dr. LeSueur's actions violated several provisions of the American Psychological Association's code of conduct — a code previously adopted by the Board.  See 251 Mass. Code Regs. 1.10; see also Mass. Gen. Laws ch. 112, § 128.  As a sanction, the Board placed Dr. LeSueur on probation for a period of two years.

Dismayed by the Board's ukase, Dr. LeSueur petitioned for judicial review in the state superior court.  See Mass. Gen. Laws ch. 30A, § 14.  Her petition alleged a salmagundi of federal constitutional and state-law grounds for setting aside the Board's order.  It also sought a declaration that certain regulations on which the Board had relied were unconstitutionally vague.[2]

Dr. LeSueur moved for judgment on the pleadings.  After considering Dr. LeSueur's legal and constitutional arguments and her charge of evidentiary insufficiency, the superior court denied the motion for judgment on the pleadings and, on July 11, 2006, dismissed the petition for judicial review.  Dr. LeSueur appealed, but the Massachusetts Appeals Court upheld the judgment.  LeSueur v. Bd. of Regist. of Psychologists, 906 N.E.2d 1031 (Mass. App. Ct. 2009) (table).  Dr. LeSueur did not seek further appellate review before the Massachusetts Supreme Judicial Court (SJC).  See Mass. R. App. P. 27.1 (authorizing petitions for discretionary appellate review by the SJC).

During the pendency of the state-court proceedings, Dr. LeSueur and Coggeshall repaired to the federal district court and, on August 23, 2008, instituted an action, pursuant to 42 U.S.C.

_____

[2] In addition, the petition sought declaratory relief under Mass. Gen. Laws ch. 231A, § 1.  The superior court dismissed this claim as "subsumed within" judicial review of the administrative action.  That determination is not challenged here.

-4-

§ 1983, against the Board and its members.[3] The federal complaint asserted claims that paralleled those asserted in the state courts, including multiple challenges to the constitutionality of the Board's actions and the regulations. Like the state-court petition, the federal complaint sought both declaratory relief and vacation of the sanction imposed by the Board.

Despite these similarities, this federal-court action differed from the earlier state-court proceedings in two noteworthy respects. First, the federal action encompassed a more diverse group of parties. In the federal court, Coggeshall appeared as a party for the first time, and the members of the Board were named as additional defendants. Second, the federal-court action sought a wider panoply of relief, including money damages and an injunction barring the Board from enforcing the challenged regulations.

The named defendants moved to dismiss the federal suit. See Fed. R. Civ. P. 12(b)(1), (b)(6). The district court obliged. With respect to Dr. LeSueur's claims for nonmonetary relief, the court ruled that it lacked jurisdiction because those claims sought vacation of a state-court decision involving functionally identical claims. Coggeshall v. Mass. Bd. of Regist. of Psychologists, No.

---

[3] Section 1983 imposes liability upon those acting under color of state law who "subject[], or cause[] to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities" secured by the federal Constitution or by federal law. 42 U.S.C. § 1983.

-5-

08-CV-11491, 2008 WL 5412290, at *2-3 (D. Mass. Dec. 28, 2008). In support, the court cited the Rooker-Feldman doctrine. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). As an alternate basis for dismissal, the court held that even if it had jurisdiction, it would be constrained to abstain. Coggeshall, 2008 WL 5412290, at *3 (citing Younger v. Harris, 401 U.S. 37, 40-41 (1971)). At the same time, the court dismissed Coggeshall's nonmonetary claims for a perceived lack of standing to sue. Id. Finally, the court dismissed the claims for money damages on immunity grounds. Id. at *3 n.3. This timely appeal ensued.

## II. ANALYSIS

Before grappling with the appellants' asseverational array, we pause to delineate our analytic framework. First, we segregate the appellants' monetary claims from their nonmonetary claims. We then address the two sets of claims in that order.

Our standard of review is uncontroversial. Although the district court's rulings implicate different subsections of Rule 12(b), we review all of those rulings de novo. See McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006). In undertaking this review, we are not wedded to the district court's rationale, but, rather, may affirm a particular order on any independent ground made manifest by the record. Id.

## A. **Money Damages**.

We start with the appellants' claims for money damages. These claims are preferred against both the Board and its members. The Board itself, as an arm of the state government, enjoys Eleventh Amendment immunity from suits for money damages brought in federal court, absent consent, waiver, or the like. See Alden v. Maine, 527 U.S. 706, 756-57 (1999); Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 477 (1st Cir. 2009); see also U.S. Const. amend. XI. Massachusetts has neither consented to be sued for damages in a federal court in the circumstances of this case nor waived its Eleventh Amendment immunity here. Consequently, that immunity demands the dismissal of the damages claims against the Board.[4]

With respect to the damages claims against the members of the Board, there is a threshold ambiguity: the appellants sued the members of the Board without specifying whether those defendants were named in their official or individual capacities. As we explain below, we need not resolve this ambiguity.

To the extent that the members of the Board are sued in their official capacities, they stand in the shoes of the state and enjoy the same immunity as does the Board. See, e.g., Rosie D. ex

---

[4] We do not imply that the Eleventh Amendment bars claims only for money damages. That is not the case. See, e.g., Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002). Here, however, we dispose of the nonmonetary claims on other grounds.

rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002). Thus, any claims against the members of the Board in their official capacities must be dismissed.

To the extent that the appellants' claims for money damages are brought against the members of the Board individually, the key question involves the applicability of the doctrine of quasi-judicial immunity. In general, that doctrine provides absolute immunity for public officials, including agency officials, who perform quasi-judicial functions. Butz v. Economou, 438 U.S. 478, 508, 512-13 (1978). The rationale for the immunity is that the due performance of an adjudicative role "require[s] a full exemption from liability." Id. at 508; see also Destek Group, Inc. v. N.H. Pub. Utils. Comm'n, 318 F.3d 32, 40-41 (1st Cir. 2003).

We do not write on a pristine page. This court addressed a virtually identical issue in an earlier case. See Bettencourt v. Bd. of Regist. in Med., 904 F.2d 772 (1st Cir. 1990). There, we held that the members of the Massachusetts Board of Registration in Medicine were entitled to quasi-judicial immunity for their actions taken as adjudicators in disciplinary proceedings. Id. at 784. In reaching this result, we performed a functional analysis. See id. at 782-83; see also Butz, 438 U.S. at 508, 512-13.

In Bettencourt, this analysis led us to conclude that the board members were "functionally comparable" to judges because their roles involved weighing evidence, making factual findings,

reaching legal determinations, choosing sanctions, and expounding reasons for their decisions.  904 F.2d at 783.  The board members also resembled judges because their duties required them to make determinations likely to provoke litigious reactions from affected parties.  Id.  Finally, we observed that board members resembled judges because they carried out adjudicatory functions in structured proceedings replete with procedural safeguards.[5]  Id.

The Board of Registration in Medicine, which was at issue in Bettencourt, is responsible for professional discipline of medical doctors.  See Mass. Gen. Laws ch. 112, §§ 2-9B.  The adjudicatory functions of its members are the same as those of the members of the Board, except that the Board's purview concerns psychologists rather than physicians.  For present purposes, that is a distinction that makes no meaningful difference.

In the last analysis, what matters is that the functions of the members of the two bodies — the Board of Registration in Medicine and the Board of Registration of Psychologists — are legally indistinguishable.  Because this is so and because the acts for which the defendants have been sued were performed by them as adjudicators, Bettencourt controls here.  See United States v. Platte, 577 F.3d 387, 392 (1st Cir. 2009) (explaining that a prior,

---

[5] The appellants' assertion that Dr. LeSueur's disciplinary proceeding was conducted amidst inadequate procedural safeguards is a Trojan horse.  This assertion seeks to have us consider a constitutional claim under circumstances in which such consideration is barred by Younger.  See infra Part II(B)(1).

on-point panel decision normally binds subsequent panels). Accordingly, we hold that the members of the Board, individually, are shielded from the damages claims by reason of quasi-judicial immunity.  See Bettencourt, 904 F.2d at 783-84.

### B.  Nonmonetary Claims.

We divide this portion of our analysis into two segments, one for each appellant.

**1.  Dr. LeSueur's Claims**.  In dismissing Dr. LeSueur's claims for nonmonetary relief, the district court elaborated two grounds: the Rooker-Feldman doctrine and Younger abstention.  We examine these alternative holdings.

The Rooker-Feldman doctrine precludes "the losing party in state court [from filing] suit in federal court after the state proceedings [have] ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005).  The district court erred in relying upon the Rooker-Feldman doctrine because, at the time that the appellants filed their federal complaint, the state case was still pending before the Massachusetts Appeals Court.  It is a condition precedent to the application of the Rooker-Feldman doctrine that, at the time the federal-court suit is commenced, the state-court proceedings have ended.  Federación de Maestros v. Junta de Relaciones del Trabajo, 410 F.3d 17, 24-29 (1st Cir. 2005).  Here,

the state-court proceedings had not yet ended, so the Rooker-Feldman doctrine was inapposite.[6]

The district court's other rationale for dismissing these claims is more persuasive. This rationale involves the Younger abstention doctrine. If certain conditions are met, that doctrine requires a district court to stay or dismiss the federal action in favor of the continued prosecution of the state-court litigation. Exxon Mobil, 544 U.S. at 292. The district court thought that those conditions were satisfied here. We agree.

Abstention is a device designed to facilitate the side-by-side operation of federal and state courts, balancing their respective interests in the spirit of comity. See Younger, 401 U.S. at 44. There are several branches of the abstention doctrine. See, e.g., Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800, 813-17 (1976); Burford v. Sun Oil Co., 319 U.S. 315, 331-34 (1943); R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 500-01 (1941). Our concern here is with Younger abstention.

Under Younger principles, a federal court must abstain from hearing a case if doing so would "needlessly inject" the federal court into ongoing state proceedings. Brooks v. N.H.

---

[6] The fact that the state proceedings have now run their course does not call for a different conclusion. For Rooker-Feldman purposes, courts must look to the situation as it existed when the federal suit was commenced. See Federación de Maestros, 410 F.3d at 24; Maymó-Meléndez v. Alvarez-Ramírez, 364 F.3d 27, 32-33 (1st Cir. 2004).

-11-

Supreme Court, 80 F.3d 633, 637 (1st Cir. 1996).  Although the Younger case itself dealt with federal interference in an ongoing state criminal prosecution, 401 U.S. at 41, Younger principles apply to noncriminal state proceedings that are judicial in nature.[7]  See Maymó-Meléndez v. Alvarez-Ramírez, 364 F.3d 27, 31 & n.3 (1st Cir. 2004); see also Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627 (1986).

Courts have developed a tripartite model for determining the appropriateness of Younger abstention.  This model requires that "(1) the [ongoing state] proceedings are judicial (as opposed to legislative) in nature; (2) they implicate important state interests; and (3) they provide an adequate opportunity to raise federal constitutional challenges."  Bettencourt, 904 F.2d at 777.  These three elements all must be assessed as of the date when the federal complaint is filed.  Id.

In this instance, it is beyond peradventure that the relevant state proceedings were judicial in nature.  See id. at 778.  It is likewise undeniable that Dr. LeSueur's petition for judicial review was still pending before the Massachusetts Appeals Court when the appellants commenced the federal case (and, thus, that the state proceedings were ongoing at the relevant time).

---

[7] There is an open question as to whether Younger abstention principles apply to claims for money damages.  See Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 516 n.14 (1st Cir. 2009). We are not tasked with answering that question here because the damages claims are otherwise barred.  See supra Part II(A).

Similarly, it needs little embellishment to establish that the state has a profound interest in the licensure of health-care professionals (such as psychologists) and the maintenance of appropriate standards of practice for such professionals. The decided cases describing the state's interest in the licensing and disciplining of physicians spell out the reasons, see, e.g., id. at 778; Weinberg v. Bd. of Regist. in Med., 824 N.E.2d 38, 46 (Mass. 2005), and it would serve no useful purpose to repastinate that well-plowed ground.

This leaves the third element of the model. On this point, Dr. LeSueur strives to convince us that Massachusetts does not provide an adequate forum in which to litigate federal constitutional challenges. We are not persuaded.

We are, of course, obliged to presume that state courts are "fully capable of safeguarding federal constitutional rights." Brooks, 80 F.3d at 639. Here, moreover, the statutory scheme that Massachusetts has enacted to provide for judicial review of administrative actions specifically directs reviewing courts to inquire into allegations of constitutional violations. See Mass. Gen. Laws ch. 30A, § 14(7)(a), (d), (g). Massachusetts courts have shown no reluctance to carry out this mandate. See, e.g., Weinberg, 824 N.E.2d at 46 (considering a First Amendment challenge and other constitutional claims). To the extent that Dr. LeSueur's argument is that the mere allegation of a federal constitutional

-13-

infraction automatically renders state procedures inadequate, that argument is hopeless. Ohio Civil Rights Comm'n, 477 U.S. at 628.

We need not delve into the merits of Dr. LeSueur's cavalcade of First Amendment, vagueness, equal protection, and due process claims. For the purpose of Younger abstention, the only question is whether the state courts provide an adequate opportunity to litigate such claims fully and fairly. Duty Free Shop, Inc. v. Administratión de Terrenos, 889 F.2d 1181, 1183 (1st Cir. 1989). That the Massachusetts courts provide such an opportunity cannot seriously be questioned. Indeed, Dr. LeSueur presented the majority of her constitutional claims, including the claim that state law affords insufficient protections to satisfy the federal constitutional minimum, in state court — albeit unsuccessfully — and she could have presented the rest, had she elected to do so.

We hasten to add that any argument that the state courts erred in deciding these issues could have been presented by Dr. LeSueur through a petition for a writ of certiorari to the Supreme Court of the United States. 28 U.S.C. § 1257. The lower federal courts cannot be used as a substitute forum for federal appellate review of final decisions of state courts. The Supreme Court is the only federal court empowered to reverse a final judgment of a state court. See Exxon Mobil, 544 U.S. at 292. By eschewing any effort to secure further appellate review before the SJC, Dr.

LeSueur closed the door to Supreme Court review of the state courts' decisions. See 28 U.S.C. § 1257; Flynt v. Ohio, 451 U.S. 619, 620 (1981) (per curiam). That, in turn, closed the door to any federal-court review of those decisions.[8]

To say more on this point would be supererogatory. This case is a paradigm for Younger abstention. The fact that the state proceedings are now ended does not alter that reality. See Bettencourt 904 F.2d at 777. Consequently, we uphold the order of dismissal on that ground.

**2. Coggeshall's Claims**. We next consider Coggeshall's nonmonetary claims. The district court ruled that Coggeshall lacked standing to pursue his claims because he had no legally cognizable stake in the outcome. Coggeshall argues that he has standing because the sanction imposed in the disciplinary proceeding transgressed his First Amendment right to receive medical advice on behalf of his minor child.[9]

Standing is both a constitutional and a prudential limitation on federal jurisdiction. N.H. Right to Life PAC v.

_____

[8] To be sure, the Younger doctrine permits inferior federal courts to intervene in ongoing state litigation in rare, tightly circumscribed instances. See, e.g., New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 366 (1989); Huffman v. Pursue, Ltd., 420 U.S. 592, 611-12 (1975); Gibson v. Berryhill, 411 U.S. 564, 577 (1973). Dr. LeSueur's claims do not fit within the narrow confines of any such exception.

[9] The First Amendment applies to state action through the medium of the Fourteenth Amendment. See N.H. Right to Life PAC v. Gardner, 99 F.3d 8, 10 n.2 (1st Cir. 1996).

-15-

<u>Gardner</u>, 99 F.3d 8, 13 (1st Cir. 1996). To satisfy the Constitution's "case or controversy" requirement, U.S. Const. art. III, a party seeking relief in federal court must show that he has suffered an actual injury, which is fairly traceable to the defendant's conduct and redressable by a favorable judicial decision. <u>Lujan</u> v. <u>Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992); <u>N.H. Right to Life</u>, 99 F.3d at 13.

In the case at hand, we need not look beyond the first of these requirements. In contemplation of law, Coggeshall has not suffered any injury in fact because he has not shown a deprivation of any constitutionally protected property or liberty interest — a failing that goes to the very heart of the standing requirement. <u>See</u>, <u>e.g.</u>, <u>Lujan</u>, 504 U.S. at 560.

To illustrate, he has shown no interference with any contractual relationship; the school hired Dr. LeSueur, not Coggeshall. At any rate, nothing in the Board's order prevented Coggeshall from engaging Dr. LeSueur directly,[10] but the complaint does not allege that he tried to do so. And there was no mystery about Dr. LeSueur's advice; Coggeshall acknowledges, at least implicitly, that he reviewed a copy of Dr. LeSueur's report. Regardless of the Board's actions, Coggeshall remained free to act on the recommendations contained in that report. Last — but far

---

[10] Although the Board placed Dr. LeSueur on probation, she was allowed to continue to see patients during the term of her probation.

from least — the Board did not in any way purpose to limit the type of treatment that Coggeshall's son could receive.

In an effort to fill this void, Coggeshall attempts to assert the rights of Dr. LeSueur and other psychologists to be free from what he describes as the "chilling effects" of professional discipline. But this horse has long since left the barn. Due to prudential limitations on standing, a party, under ordinary circumstances, may not assert the First Amendment rights of a third party. IMS Health, Inc. v. Ayotte, 550 F.3d 42, 49 (1st Cir. 2008), cert. denied, 129 S. Ct. 2864 (2009). The fact that this principle is relaxed somewhat in the First Amendment context does not eviscerate it. See Sabri v. United States, 541 U.S. 600, 609-10 (2004). Third-party overbreadth challenges must be based on "specific reasons weighty enough to overcome" the concerns prudential requirements police. Id.; see Broadrick v. Oklahoma, 413 U.S. 601, 612-15 (1973).

Thus, while the courts have carved an exception to this rule for cases in which a third party is unable to assert her own rights, see, e.g., Powers v. Ohio, 499 U.S. 400, 410-11 (1991); Payne-Barahona v. Gonzáles, 474 F.3d 1, 2 (1st Cir. 2007), the derivative claim in this case is not of that genre. Nothing hindered Dr. LeSueur from asserting her own right to be free from what Coggeshall describes as the chilling effects of professional discipline (and, indeed, she has forcefully asserted that right).

Consequently, Coggeshall's jus tertii claim fails. See IMS Health, 550 F.3d at 49-50; Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 106 (1st Cir. 1995).

In all events, Coggeshall's derivative claim does not assert a cognizable First Amendment injury. Simply because speech occurs does not exempt those who practice a profession from state regulation (including the imposition of disciplinary sanctions). See, e.g., Orhalik v. Ohio State Bar Ass'n, 436 U.S. 447, 456, 459 (1978); Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1053-55 (9th Cir. 2000). A patient, suffering no injury himself, does not hold a First Amendment trump card that may be played to rescue a licensed practitioner from state-imposed disciplinary sanctions. See Orhalik, 436 U.S. at 462 n.20; Laird v. Tatum, 408 U.S. 1, 12-14 (1972).

To sum up, we agree with the district court that Coggeshall suffered no legally cognizable injury in fact as a result of the Board's actions. It follows inexorably that Coggeshall lacks standing to pursue his nonmonetary claims.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we conclude that the district court did not err in dismissing the appellants' suit.

**Affirmed**.

-18-