# United States Court of Appeals
## For the First Circuit

No. 21-1058

JOHN DOE; CHARLES COE; JANE ROE; DEBORAH A. TAYLOR, as guardian
for SCOTT STEPHEN JOHNSTONE, on behalf of themselves and all
others similarly situated,

Plaintiffs, Appellees,

NEW HAMPSHIRE HOSPITAL ASSOCIATION; ALICE PECK DAY MEMORIAL
HOSPITAL; ANDROSCOGGIN VALLEY HOSPITAL; CATHOLIC MEDICAL CENTER;
CHESHIRE MEDICAL CENTER; COTTAGE HOSPITAL; ELLIOT HOSPITAL;
FRISBIE MEMORIAL HOSPITAL; HCA HEALTH SERVICES OF NEW HAMPSHIRE,
(Parkland Medical Center and Portsmouth Regional Hospital);
HUGGINS HOSPITAL; LITTLETON HOSPITAL ASSOCIATION, (Littleton
Regional Hospital); LRGHEALTHCARE, (Franklin Regional Hospital
and Lakes Region General Hospital); MARY HITCHCOCK MEMORIAL
HOSPITAL; MONADNOCK COMMUNITY HOSPITAL; NEW LONDON HOSPITAL;
SPEARE MEMORIAL HOSPITAL; UPPER CONNECTICUT VALLEY HOSPITAL;
VALLEY REGIONAL HOSPITAL; WEEKS MEDICAL CENTER,

Intervenor-Plaintiffs, Appellees,

v.

LORI SHIBINETTE, in her official capacity as Commissioner of the
N.H. Department of Health and Human Services,

Defendant, Appellant,

SOUTHERN NEW HAMPSHIRE MEDICAL CENTER; CONCORD HOSPITAL; ST.
JOSEPH'S HOSPITAL, Nashua; MEMORIAL HOSPITAL, North Conway,

Defendants/Intervenor-Plaintiffs, Appellees,

NEW HAMPSHIRE CIRCUIT COURT DISTRICT DIVISION,

Defendant,

HONORABLE DAVID D. KING,

Third-Party Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

---

Before

Lynch, Selya, and Barron,
Circuit Judges

---

Samuel R.V. Garland, Assistant Attorney General, with whom Anthony J. Galdieri, Senior Assistant Attorney General, and Daniel E. Will, Solicitor General, were on brief, for appellant Lori Shibinette.

Aaron J. Curtis, with whom Gilles Bissonette, Henry Klementowicz, American Civil Liberties Union of New Hampshire, Theodore E. Tsekerides, Colin McGrath, and Weil, Gotshal & Manges LLP were on brief, for class appellees.

Michael D. Ramsdell, with whom James P. Harris and Sheehan Phinney Bass & Green, P.A. were on brief, for hospital appellees.

---

October 26, 2021

---

**BARRON**, **Circuit Judge**.  This case comes to us on an interlocutory appeal by the Commissioner of the New Hampshire Department of Health and Human Services (the "Commissioner").  It concerns the extent of the state's legal obligations to people who are deemed to need emergency mental health treatment.  The plaintiffs are a class of individuals who claim to have been held against their will for too long without due process on the basis of a certification of their need for such treatment, and a group of hospitals who claim to have been forced, in violation of their federal constitutional rights, to retain persons certified to be in need of such treatment.

The Commissioner challenges the District Court's denial of her motion to dismiss the plaintiffs' complaints on the ground that each set of plaintiffs lacks standing and that, in any event, the Eleventh Amendment independently bars their claims against her.  The Commissioner now also contends to us that, in consequence of the New Hampshire Supreme Court's recent ruling in Jane Doe v. Commissioner of the New Hampshire Department of Health and Human Services, ---A.3d----, No. 2020-0454, 2021 WL 1883165 (N.H. May 11, 2021), which was decided while this appeal was pending in our Court, there is yet another jurisdictional bar to all the claims of all the plaintiffs: they are moot.

We see no merit to the Commissioner's challenges to the District Court's standing and Eleventh Amendment immunity rulings,

and so we affirm the District Court's rulings in that regard.  We also are dubious of the Commissioner's mootness assertion, at least given its sweep.  Nonetheless, rather than resolve the mootness issue on our own, we remand it for further consideration, given that the District Court did not have occasion to consider it or any of the factual questions that it may implicate.

## I.

### A.

New Hampshire law provides for the involuntary admission to the state's mental health services system of anyone who "is in such mental condition as a result of mental illness to pose a likelihood of danger to himself or others."  N.H. Rev. Stat. Ann. § 135-C:27; see also id. §§ 135-C:28(I), :34.  New Hampshire law further provides that an "involuntary emergency admission" ("IEA") -- the type of involuntary admission at issue in this case -- "may be ordered upon the certificate of" an approved healthcare professional.  Id. § 135-C:28(I).

An "IEA certificate" must identify a "receiving facility" to which a patient will be admitted for care, custody, and treatment.  Id. § 135-C:29(I); see also id. § 135-C:2(XIV).  Once an IEA certificate is completed, "a law enforcement officer" must "take custody of the person to be admitted and . . . immediately deliver such person to" that receiving facility.  Id.

New Hampshire law defines "receiving facility" to include hospitals designated by the Commissioner to provide mental health treatment. Id. § 135-C:26(II)-(III). New Hampshire law provides that, "[a]t the receiving facility, any person sought to be involuntarily admitted for involuntary emergency admission shall be given immediate notice" of certain rights, including the right to representation. Id. § 135-C:30.

Private hospitals in New Hampshire are not themselves "receiving facilities." But, a patient who is admitted to a receiving facility from a private hospital is admitted only after the private hospital completes an IEA certificate for that patient, and the largest receiving facility, New Hampshire Hospital, does not provide walk-in emergency or crisis services.

Crucial to this case, New Hampshire law provides that "[w]ithin 3 days after an involuntary emergency admission . . . there shall be a probable cause hearing in the [state] district court having jurisdiction to determine if there was probable cause for involuntary emergency admission." Id. § 135-C:31(I). The state district court[1] is required under New Hampshire law to render

---

[1] The state district court is a division of the New Hampshire Circuit Court, a state trial court, and should not be confused with the United States District Court for the District of New Hampshire. When we refer to the "District Court" in this opinion, we mean the latter, federal court. We specify where we intend to refer to state courts.

a written decision by the end of the court's next regular business day.  Id.

**B.**

John Doe filed suit against the Commissioner in the federal District Court on November 10, 2018, on behalf of himself and all others similarly situated (the "class plaintiffs").  The operative complaint alleged that Doe, a New Hampshire resident, was detained pursuant to an IEA certificate at Southern New Hampshire Medical Center on November 5, 2018 following a suicide attempt and that he was not given a probable cause hearing within the five days between that hospital's completion of an IEA certificate naming Doe and the filing of this lawsuit.  The complaint further alleged that this delay exemplified a "systemic pattern and practice in New Hampshire."  Specifically, the complaint alleged that the Commissioner interpreted state law to require that involuntarily admitted patients receive a hearing in the state district court three days after admission to a receiving facility, rather than three days after completion of an IEA certificate, and that, in consequence, members of the putative class were being detained in hospital emergency departments for up to twenty-seven days without procedural due process in violation of the federal and state constitutions and the state law governing

IEAs.[2]  The complaint requested declaratory and injunctive relief,
along with fees and costs.  The plaintiffs filed a motion for class
certification along with the complaint.

A group of hospitals that admit patients pursuant to IEA
certificates that they complete (the "hospitals") intervened in
the suit.  Like the class plaintiffs, the hospitals brought both
federal and state law claims.  With respect to their federal law
claims, their operative complaint alleged that the Commissioner
violated their rights under the Takings and Due Process Clauses of
the U.S. Constitution and the Fourth Amendment's protection
against unreasonable seizures.  The hospitals disclaimed any
request for compensatory damages and sought only injunctive and
declaratory relief, in addition to nominal damages, costs, and
attorneys' fees.

Both the class plaintiffs and the hospitals originally
named the state circuit court as a "necessary third party" under
Federal Rule of Civil Procedure 19(a) in their initial complaints
but did not do so in their amended complaints.  The class
plaintiffs, however, did name the Administrative Judge of the state
circuit court as a defendant, citing the same rule, in their

---

[2]  The named plaintiffs also brought individual false
imprisonment claims against the hospitals where they were
detained, and John Doe sought a writ of habeas corpus in the
original complaint before voluntarily dismissing that count.
Those claims are not relevant to this interlocutory appeal, and we
do not discuss them further.

amended complaint.[3]  All claims against the Administrative Judge were later dismissed on Eleventh Amendment grounds.

The Commissioner moved to dismiss under Rule 12(b)(6) primarily for failure to allege state action and filed an objection to the motion for class certification.  The class plaintiffs and the hospitals amended their complaints and filed an amended motion to certify the class in response.  The Commissioner again moved under Rule 12(b)(6) to dismiss both amended complaints for failing to allege state action.  The District Court denied the motions to dismiss and granted the motion for class certification.

The Commissioner thereafter filed answers to both complaints, in which she asserted as affirmative defenses Eleventh Amendment immunity and that the plaintiffs lacked standing. Following the granting of several extensions, the class plaintiffs moved to compel the Commissioner to participate in a status conference so that the case could proceed to discovery.  The District Court granted the motion, and the parties agreed to a deadline to submit a discovery plan, which they met.  Both sets of plaintiffs voluntarily dismissed their state law claims against the Commissioner.  The Commissioner continued to assert her jurisdictional defenses throughout these proceedings.

---

[3] The Administrative Judge oversees the state circuit court system, and thus the administration of probable cause hearings.

After the status conference, the District Court issued an order holding the adoption of the discovery plan in abeyance and requesting briefing on the Commissioner's jurisdictional defenses. The Commissioner then filed motions to dismiss both sets of plaintiffs' claims under Rule 12(b)(1) based on the Eleventh Amendment and the plaintiffs' asserted lack of standing. The District Court denied the motion to dismiss the class plaintiffs' claims. The District Court largely denied the motion to dismiss the hospitals' claims as well. However, the District Court granted the motion to dismiss the hospitals' claims as to their request for nominal damages based on the Commissioner's assertion of Eleventh Amendment immunity.

### C.

The Commissioner now appeals the District Court's adverse standing and Eleventh Amendment rulings under the collateral order doctrine. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 141 (1993) (holding that "a district court order denying a claim by a State or a state entity to Eleventh Amendment immunity from suit in federal court may be appealed under the collateral order doctrine"); Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc., 958 F.3d 38, 43, 46 (1st Cir. 2020) (determining that, "[b]ecause standing is a prerequisite to a federal court's subject matter jurisdiction, and we must assure ourselves of our jurisdiction under the federal

Constitution before we proceed to the merits of a case," we are able to review a challenge to standing on an appeal from the denial of immunity (internal citations and quotation marks omitted)). There is, however, a new issue in the case that the Commissioner asks us to address that stems from the New Hampshire Supreme Court's opinion in Jane Doe, which was issued between the filing of the appellees' briefs in this case and the filing of the appellant's reply brief. We briefly describe how that ruling bears on the matters before us in this appeal.

In Jane Doe, the New Hampshire Supreme Court confronted a request for habeas relief under New Hampshire law by a single petitioner who claimed that she had been denied her right to a probable cause hearing within three days of the completion of an IEA certificate that named her. Id. at *2. Jane Doe held that, under New Hampshire law, a probable cause hearing must be held within three days of the completion of an IEA certificate to involuntarily admit a patient to the state mental health services system, which Jane Doe defined to include certain approved medical service providers at private hospitals who complete IEA certificates. Id. at *7, *10. Jane Doe thus rejected the interpretation of New Hampshire law that the Commissioner had advanced both to that court and to us in her opening brief, under which such a hearing is said to be required to be held only within three days of the patient named in the completed IEA certificate

arriving at a "receiving facility" within the meaning of N.H. Rev. Stat. Ann. §§ 135-C:2 and :26.  Id. at *7, *12.

Following Jane Doe, moreover, the Governor of New Hampshire issued Executive Order 2021-09 (the "Order"), which directed "the State of New Hampshire [to] take immediate, targeted, and direct action to ensure there is a system in place to help individuals in mental health crisis have timely and appropriate medical care."  The Order further authorized and directed the New Hampshire Department of Health and Human Services to use emergency administrative rules to increase access to mental health services and to "clarify the roles New Hampshire hospitals have in caring for those patients who present at a hospital with mental health concerns."  The Order also required the Department "to review all mental health services in the State of New Hampshire to determine if current providers are equipped to meet the needs of New Hampshire citizens and, where necessary, [to] identify new and/or alternative providers," and to "expand the number of Designated Receiving Facility ('DRF') beds on an expedited basis."

The Commissioner has issued certain emergency rules in response to the Order.  Neither the Order nor the emergency rules set forth any express guarantee that either group of plaintiffs will receive the relief that they seek.

The Commissioner asserts in her reply brief to us that the New Hampshire Supreme Court's decision in Jane Doe has mooted

- 11 -

this case, because it entitles both groups of plaintiffs to all the relief that they seek.  With our permission and without opposition from the Commissioner, both sets of plaintiffs filed sur-reply briefs, accompanied, on the hospitals' part, by data showing that as of that time there continued to be a waitlist for beds at receiving facilities.

## II.

As we have explained, the Commissioner originally presented only two issues to us on interlocutory appeal: standing and Eleventh Amendment immunity.  She now seeks to add a third issue to the mix: mootness.  Because each of these issues is jurisdictional, we may take them up in any order.  United States v. Reid, 369 F.3d 619, 624 (1st Cir. 2004) ("[J]urisdictional issues may be addressed in any sequence." (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584-85 (1999))).

The Commissioner invites us to remand without reaching either the standing or Eleventh Amendment immunity issues on account of the New Hampshire Supreme Court's new ruling in Jane Doe.  The record before us, however, is sufficiently developed for us to resolve those issues now, thereby obviating the possible need for wasteful future appeals.  Thus, we start with the issue of standing and then turn to the issue of Eleventh Amendment immunity.  We then circle back to the newly raised mootness issue at the end.

**A.**

Article III of the Constitution restricts our subject matter jurisdiction to cases or controversies. See Penobscot Nation v. Frey, 3 F.4th 484, 508 (1st Cir. 2021) (en banc). To satisfy that constraint, a plaintiff must demonstrate that she has standing to bring the claim that she seeks to have adjudicated. See id. A plaintiff has standing if she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).

The Commissioner argues that the injuries alleged by both the class plaintiffs and the hospitals are not fairly traceable to her and that the requested relief would not redress them. She thus contends that all their claims must be dismissed for lack of standing.

Our review of the District Court's denial of the motions to dismiss the plaintiffs' claims for lack of standing is de novo. See Coggeshall v. Mass. Bd. of Registration of Psychs., 604 F.3d 658, 662 (1st Cir. 2010). At this stage of the litigation we must construe the operative complaints "liberally and treat all well-pleaded facts as true, according the plaintiff[s] the benefit of all reasonable inferences." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

**1.**

We start with the Commissioner's challenge to the hospitals' standing. We note that the Commissioner does not dispute that their complaint alleges an injury in fact. Nor do we see how she could.

The complaint alleges that the hospitals have been unlawfully forced to retain involuntarily admitted patients for long periods of time in their facilities and thus to provide them with rooms, medical care, food, security, and support from staff, who also need to repeatedly fill out successive IEA certificates every three days. In consequence, the complaint continues, the hospitals have fewer beds to treat other patients who require admission and are instead required "to perform the State's obligations" and to undertake new construction to create the necessary secure space. It alleges that one hospital retained patients for an average length of five days in 2018.

The Commissioner contends, however, that the injuries claimed by the hospitals are not fairly traceable to any violation of law by her and thus are not redressable by the relief that the hospitals seek in their suit against her. We are not persuaded.

The Commissioner argues that the costs that the hospitals claim to have incurred in claiming to have been injured are self-imposed. She points out that it is members of the hospital staff who fill out the IEA certificates and that no

statute compels them to complete those certificates. Thus, the Commissioner contends, the costs to the hospitals of holding patients at their facilities pursuant to IEA certificates are incurred due to the hospitals' own decisions to admit them.

Furthermore, the Commissioner contends that there is a traceability problem -- and thus a redressability problem -- for yet another reason. She contends that "law enforcement" -- and thus not her, as Commissioner -- is responsible for the transport to "receiving facilities" of patients named in IEA certificates.

But, these arguments fail to address the fact that the hospitals' complaint plausibly alleges that the Commissioner has directed the hospitals not to release the patients named in IEA certificates prior to their being given a probable cause hearing, notwithstanding the undisputed existence of a state law requirement for private hospitals in New Hampshire to have open emergency rooms and to treat patients in line with professional ethical standards, N.H. Rev. Stat. Ann. § 151:2-g; N.H. Code Admin. R. Ann. Med. § 501.02(h). Thus, the Commissioner offers no explanation for why the hospitals' alleged injuries are not fairly traceable to her alleged failure to ensure that such a hearing is held in the timely manner that they contend that federal law requires, even though we understand each of the federal constitutional claims at issue to be predicated necessarily --

- 15 -

though not entirely -- on that alleged failure.  Accordingly, we see no merit in her traceability and redressability arguments.

**2.**

Turning to the class plaintiffs' standing, the Commissioner once again does not dispute that the complaint at issue alleges a clear injury in fact.  Nor, again, do we see how she could.  The complaint alleges that the class plaintiffs are being held against their will without having been afforded due process for as many as twenty-seven days.

The Commissioner argues, however, that this injury, too, is not traceable to any violation of law that she has committed and thus is not redressable by the relief that the class plaintiffs seek.  In support of that contention, she argues that the state circuit court system, law enforcement, the state legislature, and private hospitals are responsible for the class plaintiffs' claimed injury, because they are the ones responsible for failing to hold a hearing, failing to transport patients to a hearing, failing to appropriate enough money to expand the number of beds at receiving facilities, and the control of emergency departments, respectively.

But, the Commissioner does not dispute that the class plaintiffs plausibly allege in their complaint that she is the one who bars them from being released from the hospitals in which they are being held until a probable cause hearing is conducted.  Nor

does she dispute that they have plausibly alleged that she has not ensured that a probable cause hearing is held as soon as they contend that it must be. Thus, because they have plausibly alleged that she causes their alleged injury by failing to ensure that such a hearing is held, her traceability and redressability contentions are without merit.

**B.**

The Commissioner's remaining contention in her opening brief is that the Eleventh Amendment makes her immune from the claims of both the class plaintiffs and the hospitals. The Eleventh Amendment generally bars suits against states and state officials. However, the exception to Eleventh Amendment immunity laid out in Ex parte Young, 209 U.S. 123 (1908), allows federal courts to "'grant[] prospective injunctive relief to prevent a continuing violation of federal law,' in part because 'a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State.'" Negrón-Almeda v. Santiago, 528 F.3d 15, 24 (1st Cir. 2008) (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)).

"In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v.

Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)).  Our review is de novo.  Coggeshall, 604 F.3d at 662.

Both sets of plaintiffs seek prospective injunctive relief, and the Commissioner does not contend otherwise.[4]  She first contends, however, that neither set of plaintiffs alleges that she has violated federal law and that, in fact, each set seeks merely to require that she comply with state law.  She thus contends that the Eleventh Amendment bars her from being subjected to suit on those claims under Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 106 (1984).  We do not agree with the Commissioner's characterization of the claims that are at issue.

The class plaintiffs allege that the Commissioner has deprived them of their liberty without the due process to which they are entitled under the federal Constitution.  Thus, at least at first blush, the class plaintiffs seek to require the Commissioner to comply with federal, not state, law and so, in that respect, appear to bring claims that fall squarely within the

---

[4] The Commissioner does argue in her reply brief that injunctive relief is inappropriate as a matter of law in light of Jane Doe.  Assuming without deciding that this argument is jurisdictional and thus properly before us, we consider the argument a strand of the Commissioner's mootness argument, which we address infra.

Ex parte Young exception, notwithstanding the Commissioner's contrary contention.

The Commissioner responds that in fact the class plaintiffs' claims are state law claims masquerading as federal law claims. In her view, the class plaintiffs' claims merely seek to require her to comply with their interpretation of the three-day requirement for holding probable cause hearings under New Hampshire law and so seek to compel her to comply with what is at root a purely state law obligation, which is just what Pennhurst precludes.

The problem with the Commissioner's argument is that the class plaintiffs contend that, even if New Hampshire law were different than it now is with respect to the duty of the Commissioner to provide for a probable cause hearing within three days of the signing of an IEA certificate, see Jane Doe, No. 2020-0454, 2021 WL 1883165, at *12 (quoting John Doe v. Comm'r, N.H. Dep't of Health and Hum. Servs., No. 18-cv-1039, 2020 WL 2079310, at *11 (D.N.H. Apr. 30, 2020)) (providing that the Commissioner has a legal duty to "provide for probable cause hearings within three days of when an [involuntary emergency admission] certificate is completed" (alteration in original)), they would still be entitled under the Fourteenth Amendment to an injunction directing the Commissioner to provide probable cause hearings within the time that they contend due process demands that such

- 19 -

hearings be held. They are thus plainly seeking more than just a direction that state officials must "conform their conduct to state law," Pennhurst, 465 U.S. at 106, regardless of whether their contention about what the federal Constitution requires in terms of setting such hearings has merit, see Vega v. Semple, 963 F.3d 259, 283-84 (2d Cir. 2020) ("Plaintiffs seek prospective relief . . . to remedy alleged violations of both federal and state law. . . . While any relief ultimately granted must serve to remedy a violation of federal law, the Pennhurst doctrine does not compel dismissal of claims for prospective relief against state officers in their official capacities for alleged violations of federal law simply because the party seeking such relief refers to state law in order to bolster their federal claim.").

We turn, then, to the claims of the hospitals. Like the class plaintiffs, they appear to be alleging violations of federal rather than state law, despite what the Commissioner says. Indeed, their complaint alleges that in violation of the Fourteenth Amendment to the U.S. Constitution the Commissioner has taken their private property for public use without just compensation, deprived them of the right to due process of law, and unreasonably seized their property.

The Commissioner nonetheless contends, much as she did with respect to the claims of the class plaintiffs, that, despite their federal veneer, the hospitals' claims are mere state law

claims.  She premises that contention on her assertion that each of these supposed federal law claims is dependent on the allegation that she has failed to comply with a purely state law obligation to hold a probable cause hearing for a patient involuntarily admitted based on an IEA certificate within three days of the completion of that certificate.  But, this contention overlooks the fact that, like the class plaintiffs, the hospitals contend with respect to each of their federal law claims that the Commissioner's obligation to hold such hearings as quickly as they contend that they must be held is itself rooted in the federal Constitution rather than state law.[5]  Thus, for the same reason that Pennhurst provides no basis for dismissing the claims of the class plaintiffs, it also provides no basis for dismissing the claims of the hospitals.

The Commissioner does separately argue that the Ex parte Young doctrine is not applicable to either the class plaintiffs' claims or the hospitals' because the State of New Hampshire is the real, substantial party in interest, see Pennhurst, 465 U.S. at 101, and she advances two arguments to support that contention. Neither one, however, is persuasive.

---

[5] Although, as noted above, the hospitals seek only injunctive relief, their takings claim is dependent on the State's failure to provide "just compensation" as the federal Constitution requires for a taking.  See U.S. Const. amend. V.

First, the Commissioner claims that the state is the real, substantial party in interest because, to provide effective relief for any of the claims by either set of plaintiffs, she would need to exercise authority that, insofar as it resides anywhere within state government, does not reside with her. But, we see no basis for concluding that a request for the Commissioner to exercise her authority to ensure that probable cause hearings are held in the timely manner they contend is required is not a request that seeks for her to exercise the powers of her office. See Jane Doe, No. 2020-0454, 2021 WL 1883165, at *12.

Moreover, the hospitals contend that their injuries are traceable to the Commissioner because she directs them to continue to hold patients beyond the period that they contend she may, under federal law, do so. Yet, the Commissioner does not explain how she is without authority to comply with a federal law obligation -- insofar as it exists -- to refrain from imposing such a requirement on the hospitals.

The second reason that the Commissioner advances for concluding that the state is the real, substantial party in interest is that both sets of plaintiffs seek relief that, she claims, would interfere with the public administration of the state mental health system. See Pennhurst, 465 U.S. at 101 n.11. The Commissioner premises this contention in her briefing to us, however, solely on the assertion that she is not required to give

- 22 -

probable cause hearings within three days of the completion of an IEA certificate. The New Hampshire Supreme Court's decision in Jane Doe, however, necessarily strips that contention of any force, and she does not develop any argument in its place. See United States v. Zannino, 895 F.2d 1, 17 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

## C.

The Commissioner does also argue in her reply brief that both sets of plaintiffs' claims are moot because Jane Doe has already granted them all the relief that they seek. Both sets of plaintiffs take issue with the Commissioner on this score. They point out that Jane Doe was a habeas case involving one plaintiff and so resulted in no judgment against the Commissioner that they may enforce. They also contend that their alleged injuries are continuing because probable cause hearings continue to be delayed. The hospitals add that the Commissioner's emergency rules seek to require the hospitals to provide more services to the patients awaiting transfer to receiving facilities whom they are holding. The class plaintiffs, for their part, argue that they are entitled to additional process that Jane Doe does not guarantee.

Given these contentions, we are dubious that every claim in this case is moot, especially given the limited scope of Jane Doe -- for example, Jane Doe did not address any issues implicated

by the Takings Clause.  But, rather than resolve this newly raised issue on appeal, we conclude that it is prudent to leave it to the District Court to address it in the first instance on remand.  That is especially so insofar as the assertion of mootness may implicate any questions of fact that the District Court has not had an opportunity to address.

### III.

We **affirm** the rulings of the District Court.  We **remand** for further proceedings consistent with this opinion.