# United States Court of Appeals
## For the First Circuit

No. 16-1492

MARK W. EVES,
Plaintiff, Appellant,

v.

PAUL R. LEPAGE,
Defendant, Appellee.

**ORDER OF COURT**

**Before**
**Howard, Chief Judge,**
**Torruella, Stahl, Lynch, Thompson, Kayatta,** and Barron, **Circuit Judges.**

Entered:  January 19, 2018

A majority of the active judges who are not disqualified have voted to hear this case en banc.  Accordingly, the petition for rehearing en banc is granted.  In accordance with customary practice, the panel opinion and the dissent released on November 22, 2016 are withdrawn, and the judgment entered the same date is vacated.  See 1st Cir. I.O.P. X(D).

The en banc court will have copies of the parties' previously filed briefs.  In addition, the parties are directed to file supplemental briefs addressing the following questions, in addition to any other questions the parties may wish to address.

1.  In light of the record below, has Governor LePage met his burden of proof to establish the affirmative defense of qualified immunity?

2.  Do the facts pleaded in the complaint and contained in the record below establish that there are sufficient ties between Good Will-Hinckley (GWH) and the Maine Academy of Natural Sciences (MeANS) to support the conclusion that the President of GWH is a policymaker for purposes of the First Amendment?

3.  The Maine legislature has authorized the Commissioner of the Maine Department of Education, at his discretion, to "expend and disburse funds for

---

* Judge Kayatta is recused from this matter and did not participate in its determination.

the Center of Excellence for At-risk Students," M.R.S.A. tit. 20-a, § 15689-A(20), a public charter school, if the legislature appropriates such funds in the biennial budget to accomplish the state government's goal of "provid[ing] a comprehensive residential and nonresidential program for educating at-risk students," id. § 6951(3). The 2013–2015 budget appropriated $1.06 million in discretionary funding for this purpose, but it was not clear until June 30, 2015, when the 2015–2017 budget was passed, whether the legislature would choose to appropriate the funds again.

Would an objectively reasonable governor have known in June 2015 that he would violate the First Amendment rights of the new leader of an organization that has previously received discretionary government funding by expressing an intention to withhold such funding, if appropriated again and committed to executive discretion again by the legislature, because of the new leader's expressed views on charter schools and state education policy? Compare O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712 (1996) (extending public-employee First Amendment protections to government contractors), and Bd. of Cty. Comm'rs v. Umbehr, 518 U.S. 668 (1996) (same), with, e.g., Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc., 133 S. Ct. 2321 (2013) (explaining that the government may "impose limits on the use of [government] funds to ensure they are used in the manner [the government] intends"), Rust v. Sullivan, 500 U.S. 173 (1991), and Regan v. Taxation with Representation of Wash., 461 U.S. 540 (1983).

4. Would an objectively reasonable governor have known in June 2015 whether the Speaker, an elected official, had First Amendment rights more closely analogous to those of a private citizen or those of a "public employee mak[ing] statements pursuant to [his] official duties"? Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).

5. The Second Amended Complaint includes allegations that Speaker Eves's past views on charter schools were an animating factor behind Governor LePage's threat to withhold future funding from Good Will-Hinckley ("GWH"). See, e.g., Compl. ¶ 102 (Governor's public letter to the Board Chairs of GWH and MeANS notes that "Speaker Eves has been a longtime opponent of public charter schools" who has the backing of "union bosses," and includes newspaper articles quoting Eves as criticizing the Governor's proposed policies regarding charter schools); id. ¶ 122 ("[Eves] worked his entire political career to oppose and threaten charter schools in Maine. He is the mouthpiece for the Maine Education Association. Giving taxpayers' money to a person who has fought so hard against charter schools would be unconscionable.") Although the Complaint alleges that the Governor was motivated by antipathy toward the Maine Democratic Party, see, e.g., id. ¶¶ 1–3, 74–77, it does not allege that the Governor threatened to withhold future funding if some other Democrat were hired in Eves's place.

In light of the particular details of the nexus between the state executive branch, the state legislature, MeANS, and GWH:

a. Would an objectively reasonable governor have known in June 2015 that it was impermissible for the government to "terminate[] its affiliation" with GWH because the governor believed that GWH's new leader was opposed to charter schools, that the new leader was "unreliable, or [that the new leader's] political 'affiliation [wa]s an appropriate requirement for the effective performance'" of the GWH presidency? O'Hare Truck Serv., 518 U.S. at 725 (quoting Branti v. Finkel, 445 U.S. 507, 518 (1980) (discussing the policymaker exception)).

b. If the President of GWH could not properly be viewed as a "policymaker," did the Governor make a reasonable mistake in concluding otherwise, taking into account GWH's specific relationship with MeANS? See Lopez-Quinones v. P.R. Nat'l Guard, 526 F.3d 23, 27–28 (1st Cir. 2008) (noting, in the context of a claim that an official had been terminated for his political affiliation, that "as the law stood . . . a reasonable official could (albeit mistakenly) have deemed" the official a policymaker).

c. To the extent that this reasonable-mistake argument was not raised by Governor LePage either before the panel or during proceedings below, is it one that the en banc court may consider?

d. Would an objectively reasonable governor have known in June 2015 that the "government speech" doctrine did not protect his communications from suit, where his subjective intention in speaking was to coerce? See, e.g., Walker v. Texas Div., Sons of Confederate Veterans, Inc., 135 S. Ct. 2239 (2015); Goldstein v. Galvin, 719 F.3d 16, 30–31 (1st Cir. 2013).

The supplemental briefs should be filed simultaneously on, or before, February 21, 2018; shall not exceed 14,500 words; and shall otherwise comply with applicable rules concerning format, service and other requirements. Any reply supplemental briefs shall not exceed 7,250 words and must be filed no later than 14 days after the principal supplemental briefs are filed. Seventeen paper copies of all briefs filed should be provided to the Clerk's Office no later than one business day after the electronic brief is filed.

The en banc hearing will be scheduled for April 3, 2018 at 9:30 a.m., En Banc Courtroom, 7th Floor, John Joseph Moakley Courthouse, Boston, Massachusetts.

By the Court:
/s/ Margaret Carter, Clerk

cc:
Hon. George Z. Singal
Christa Berry, Clerk, United States District Court for the District of Maine
David G Webbert
Carol J. Garvan

- 3 -

Andrew Arthur Schmidt
Patrick N. Strawbridge
Bryan K. Weir
Audrey Spence