# United States Court of Appeals

## For the First Circuit

No. 23-1687

DR. STEPHEN T. SKOLY, JR.,

Plaintiff, Appellant,

v.

DANIEL J. MCKEE, in his official and individual capacities as
the Governor of the State of Rhode Island; DR. JAMES MCDONALD,
in his official and individual capacities as the former Interim
Director of the Rhode Island Department of Health; DR. UTPALA
BANDY, in her official and individual capacities as the current
Interim Director of the Rhode Island Department of Health; THE
STATE OF RHODE ISLAND; MATTHEW D. WELDON, in his official and
individual capacities as the Director of the Rhode Island
Department of Labor & Training; DR. NICOLE ALEXANDER-SCOTT, in
her official and individual capacities as the former Director of
the Rhode Island Department of Health; RHODE ISLAND DEPARTMENT
OF HEALTH; RHODE ISLAND DEPARTMENT OF LABOR AND TRAINING,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Gregory P. Piccirilli, with whom Christy B. Durant, Durant
Law, and Law Office of Gregory P. Piccirilli were on brief, for
appellant.
James J. Arguin, Special Assistant Attorney General, Rhode

Island Office of the Attorney General, for appellees.

———————————

May 31, 2024

———————————

**LYNCH**, **Circuit Judge**.  Appellant Dr. Stephen T. Skoly, Jr., an oral and maxillofacial surgeon licensed to practice dentistry in Rhode Island, stated to a journalist from The Providence Journal that he would not comply with a COVID-19 Emergency Regulation issued by the Rhode Island Department of Health ("RI DOH") on August 17, 2021, and which came in effect on October 1, 2021.  Following Skoly's statement of noncompliance, the RI DOH on October 1 issued a Notice of Violation and Compliance Order against him, which the RI DOH dismissed on March 11, 2022, because the Emergency Regulation was no longer in effect.

Skoly brought suit in federal court against the state and its officials, asserting equal protection, due process, and First Amendment violations on a variety of theories.  On defendants' motion, the district court dismissed his complaint under Federal Rule of Civil Procedure 12(b)(6).

Conceding that his claims for declaratory and injunctive relief are moot, Skoly appeals, asserting that the dismissal was in error and his damages claims against the state officials in their individual capacities survive.  We affirm the complaint's dismissal under Rule 12(b)(6).

**I.**

On August 17, 2021, the RI DOH issued Emergency Regulation 216-RICR-20-15-8 ("First Emergency Regulation"), which stated that all "health care workers and health care providers

must be vaccinated [against COVID-19], subject to . . . medical exemption[s] set forth in [the regulation]." 216-RICR-20-15-8.3(A)(3). The First Emergency Regulation became effective on October 1, 2021, and remained in effect until March 11, 2022, applying to all health care workers and health care providers that provided in-person care, unless they met the requirements for medical exemptions established "in accordance with Advisory Committee on Immunization Practices . . . guidelines" of the federal Centers for Disease Control and Prevention ("CDC"). 216-RICR-20-15-8.3(D)(1).

Skoly, a health care provider, decided not to comply with the First Emergency Regulation and spoke about his decision to a journalist, who "reported the conversation in The Providence Journal" on September 30, 2021.

On October 1, 2021, the RI DOH, through its then-Director Nicole Alexander-Scott, issued a Notice of Violation and Compliance Order ("Notice") against Skoly. The Notice stated that "[o]n October 1, 2021, the Providence Journal reported that [Skoly] stated that (a) he was not vaccinated, (b) did not meet the medical exemption incorporated in the regulation, and that he intended to directly engage in patient care or activity in which he or others would potentially be exposed to infectious agents that can be transmitted from person to person." The Notice stated that Skoly was "ordered to cease professional conduct as a health care

- 4 -

provider . . . unless and until he . . . complied with the [First Emergency Regulation]." The Notice did not impose penalties or specify a deadline within which Skoly had to come into compliance. The Notice stated further that Skoly could file "a written request for a hearing . . . within 10 days after service of th[e] notice," pursuant to 23 R.I. Gen. Laws §§ 23-1-20 and 23-1-22, and that if he did not request a hearing, the Notice would "become a compliance order by operation of law" and Skoly could be subject to "additional sanctions and penalties authorized by law" if he failed to comply with the Notice.

Skoly promptly requested a hearing and filed a motion that he be allowed to continue practicing dentistry without complying with the First Emergency Regulation during the pendency of his administrative appeal from the Notice. He argued that he should be treated as equivalent to medically exempt health care workers. Skoly asserts that his decision not to be vaccinated was due to his history of Bell's palsy and his prior recovery from a COVID-19 infection. He has never asserted that his opposition to being vaccinated was based on religious grounds or complained about the exemptions on religious grounds.

On November 8, 2021, a DOH hearing officer held a hearing on his motion at which Skoly was represented by counsel. On November 10, the hearing officer, in a seventeen-page decision denying the motion, noted that Skoly had "exercised his right to

appeal the Compliance Order" and held that "there [we]re no grounds to find that he c[ould] continue to practice in violation of the Regulation pending a full hearing on the [Notice]." The hearing officer observed that Skoly had conceded that he was not vaccinated against COVID-19 and that he was in violation of the First Emergency Regulation. And, the hearing officer found, the Notice itself imposed no sanctions. Rather, it "ordered [Skoly] to cease acting as a health care provider as defined in the [First Emergency] Regulation until he complied with the [First Emergency] Regulation." Rejecting Skoly's argument that he should be allowed to continue practicing pending the resolution of his administrative appeal of the Notice, the hearing officer found that Skoly was undisputedly "an unvaccinated health care provider" who was in "violation of the [First Emergency] Regulation," such that the RI DOH could validly issue a Notice ordering him to "cease professional conduct as a health care provider . . . until he complied with the Regulation." The hearing officer noted, further, that the RI DOH had not sought "a sanction on [Skoly's] [l]icense" and that Skoly could continue to engage in "activities as a licensed dentist" that do "not directly involve[] . . . patient care."[1]

---

[1]     Contrary to Skoly's new (and so waived) argument on appeal, the state did not need to afford him a hearing prior to issuing the Notice. Given Skoly's admitted noncompliance with the Regulation, "it is difficult to imagine what value there would

Despite the denial of his motion, Skoly continued to refuse to be vaccinated. Instead, "[h]e closed his private practice" and "terminated the employment of his . . . staff." The Notice as to Skoly was posted on the RI DOH website.

On March 11, 2022, the RI DOH issued Emergency Regulation 216-RICR-20-15-9 ("Second Emergency Regulation"), which became effective on that date and replaced the First Emergency Regulation. The new regulation applied to "[h]ealth care worker[s]" but not to "health care provider[s]" who, like Skoly, worked in a private practice and did not have "privileges at . . . [a] health care facility." The regulation also allowed health care workers to "[w]ear a medical grade N95 mask" as an alternative to being vaccinated against COVID-19. 216-RICR-20-15-9.3(D)(2). Under the Second Emergency Regulation, Skoly was no longer required to be vaccinated against COVID-19. On that same day, March 11, the RI DOH withdrew the Notice and dismissed the administrative proceedings against him. About six months later, the Notice was removed from the RI DOH website.

---

have been in a pre-deprivation hearing," because Skoly never "challenge[d] the [RI DOH's] key finding that precipitated its action": his intention to violate the Regulation by practicing dentistry in person while remaining unvaccinated against COVID-19. See González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011). We also reject as waived Skoly's argument that the RI DOH violated his due process rights by not referring his matter to the State's Board of Examiners in Dentistry.

- 7 -

On May 25, 2022, the RI DOH issued Regulation 216-RICR-20-15-7 pertaining to COVID-19 ("Permanent Regulation"), which became effective on June 15, 2022 and replaced the Second Emergency Regulation. The Permanent Regulation reaffirmed that health care workers could "[w]ear an N95 mask," 216-RICR-20-15-7.6.1(B)(2), as an alternative to "[b]e[ing] up to date with all CDC recommended doses of FDA approved or authorized COVID-19 vaccine[s]," 216-RICR-20-15-7.6.1(B)(1). The Permanent Regulation also provided that

> [i]n accordance with the Center for Medicaid and Medicare Services (CMS) 86 FR 61555, all Medicare and Medicaid certified providers, suppliers, and healthcare workers [were] required to receive the primary series (e.g., two (2) doses of Pfizer or Moderna, or one (1) dose of Johnson & Johnson) of a COVID-19 vaccine.

216-RICR-20-15-7.6.1(B)(2). Skoly alleges that a portion of his practice was at two CMS facilities, the Eleanor Slater Hospital and the Adult Correctional Institute, and that as a result of the Permanent Regulation, he could no longer practice there while remaining unvaccinated against COVID-19.

## II.

On September 29, 2022, Skoly filed a Third Amended Complaint, the operative complaint here,[2] under 42 U.S.C. § 1983, naming as the defendants pertinent to this appeal the RI DOH, the

---

[2] Skoly filed his original complaint on February 4, 2022.

State of Rhode Island, and various state officials in their official and individual capacities: the Governor of Rhode Island Daniel J. McKee, former Director of the RI DOH Nicole Alexander-Scott, then-Interim Director of the RI DOH Utpala Bandy, and former Interim Director James McDonald. The only remaining claims in this appeal are those for money damages against the state officials sued in their individual capacities.[3]

Skoly's complaint alleges that the defendants violated his rights under the U.S. Constitution and 42 U.S.C. § 1983 by enforcing the vaccine requirement against him. Count I alleges that Governor McKee and Directors Alexander-Scott, McDonald, and Bandy violated his rights under the Equal Protection Clause by "preventing him from practicing medicine, while allowing other healthcare workers who presented no lesser risk to the public to treat patients," and that those defendants "had no rational basis on which to treat the masked, unvaccinated Dr. Skoly differently

---

[3] Skoly does not challenge the dismissal, pursuant to Will v. Michigan Department of State Police, 491 U.S. 58 (1989), of his claims for monetary damages against the state defendants in their official capacities. He also dismissed by stipulation his claims against the Rhode Island Department of Labor and Training and its Director, Matthew D. Weldon. Skoly further concedes on appeal, as he did to the district court, that his requests for injunctive relief are moot. Since Rhode Island rescinded the First Emergency Regulation, Skoly has been able to work in his private practice "unfettered by his vaccine status." And Rhode Island has before represented that it would no longer enforce the Permanent Regulation's vaccination requirement for CMS-certified providers, meaning Skoly could once more provide in-person services at Eleanor Slater Hospital and the Adult Correctional Institute.

from (and worse than) the masked, unvaccinated medically exempt worker, or the masked vaccinated worker with an active infection."

Count II alleges that the same defendants, by refusing to grant Skoly a medical exemption, deprived him of his "liberty interest" in practicing medicine, his "property interest in his practice," and his "liberty interest" in not being vaccinated, in violation of the Due Process Clause of the Fourteenth Amendment. Under that Count, Skoly seeks damages from the posting of the Notice against him on the RI DOH website.

Count III alleges that Governor McKee and former Directors Alexander-Scott and McDonald enforced the vaccine requirement against him in violation of his First Amendment rights, as retaliation for his speaking out against the First Emergency Regulation. As to Governor McKee, the complaint alleges:

> Dr Skoly was informed that, because he had "opened his big mouth" by speaking to the press, he had made his suspension a political issue, not a medical one. Therefore, with the knowledge and approval of Defendants Alexander-Scott, McDonald and McKee -- who could have rescinded the Notice of Violation and Compliance Order -- Dr. Skoly was told that his choice was to submit to vaccination or to stay suspended.

At oral argument and in his briefing, Skoly clarified that this hearsay information referred to "the Governor (or his subordinates)."

The defendants moved to dismiss the complaint, and the district court granted their motion on July 20, 2023, after briefing and oral argument. As relevant to this appeal, the district court found that the state officials were entitled to either absolute or qualified immunity for their alleged actions. The court held, pursuant to Goldstein v. Galvin, 719 F.3d 16 (1st Cir. 2013), that "former and current [RI DOH] directors Alexander-Scott, McDonald and Bandy" enjoyed absolute immunity in issuing the Notice and "enforc[ing] [the] compliance order[]" because they were exercising prosecutorial authority delegated to them by Rhode Island law.

As to Governor McKee, he was protected from suit by qualified immunity, because Skoly could not "make out any clearly established right violated by the bringing of the administrative enforcement action against [Skoly] and for his admitted refusal to comply with the [First] [E]mergency [R]egulation." The First Emergency Regulation's medical exemption criteria were consistent with CDC guidelines, and so Skoly's constitutional attack failed.

As to the claim that the posting of the Notice constituted retaliation in violation of the First Amendment, the district court held that the operative complaint had not asserted such a claim. In addition, the court held that even if the claim had been properly asserted, it would fail. Again citing Goldstein, the court held that the posting of the Notice constituted

- 11 -

government speech, which "could not form the basis of a plausible First Amendment retaliation claim." As to Skoly's argument that the Notice had "remained on the website for some six months after withdrawal of the violation, . . . [Skoly] point[ed] to no legal authority that requires the charging documents for an enforcement action [to] be removed from an agency's website within a certain period of time."

Skoly timely appealed.

## III.

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6). See Lowe v. Mills, 68 F.4th 706, 713 (1st Cir. 2023). "Issues of law are reviewed de novo." Buchanan v. Maine, 469 F.3d 158, 162 (1st Cir. 2006). "We take the complaint's well-pleaded facts as true, and we draw all reasonable inferences in [Skoly's] favor." Frese v. Formella, 53 F.4th 1, 5 (1st Cir. 2022) (quoting Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018)), cert. denied, 144 S. Ct. 72 (2023). "To survive dismissal, 'the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."'" Id. at 5-6 (quoting Barchock, 886 F.3d at 48).

## A.        Claims against Rhode Island DOH officials

The district court correctly held that former and current Directors Alexander-Scott, McDonald, and Bandy are

- 12 -

entitled to absolute immunity for their roles in issuing the Notice and enforcing the First Emergency Regulation against Skoly. "The baseline rule is that a state official who performs prosecutorial functions, including the initiation of administrative proceedings that may result in legal sanctions, is absolutely immune from damages actions." Goldstein, 719 F.3d at 26. As in Goldstein, the former and current RI DOH Directors performed "prosecutorial functions" in bringing the enforcement action against Skoly, and they performed those functions pursuant to authority delegated by statute. See 23 R.I. Gen. Laws § 23-1-20 ("Whenever the director determines that there are reasonable grounds to believe that there is a violation of any law administered by him or her or of any rule or regulation adopted pursuant to authority granted to him or her, the director may give notice of the alleged violation to the person responsible for it."). "[A]bsolute immunity endures even if the official[s] 'acted maliciously and corruptly' in exercising [their] . . . prosecutorial functions," Goldstein, 719 F.3d at 24 (quoting Wang v. N.H. Bd. of Registration in Med., 55 F.3d 698, 702 (1st Cir. 1995)), but Skoly does not plead that the officials acted maliciously and corruptly in any event. Indeed, Skoly concedes in his brief that Director Alexander-Scott (and presumably her successors, too) is entitled to absolute prosecutorial immunity.

**B.        Claims against Governor McKee**

Skoly argues that Governor McKee is not entitled to absolute immunity because the Governor did not himself make the decision to prosecute Skoly.  The district court correctly found that, regardless, the Governor would be entitled to qualified immunity because Skoly had no clearly established right to continue to practice while violating the vaccine mandate.  See Est. of Rahim v. Doe, 51 F.4th 402, 410 (1st Cir. 2022) ("The doctrine of qualified immunity shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (internal quotation omitted) (quoting City of Tahlequah v. Bond, 595 U.S. 9, 12 (2021))).  The exemption criteria under the First Emergency Regulation were consistent with CDC guidelines, which did not include the medical exemption that Skoly asserts. Governor McKee (and the other state officials) had a rational basis, then, for not exempting people with a history of Bell's palsy from vaccination.  See Brox v. Hole, 83 F.4th 87, 101 (1st Cir. 2023) (stating that compliance with CDC guidance was "more than sufficient" to show that Massachusetts ferry authority acted rationally when crafting a vaccination requirement); Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 10 (1st Cir. 2013) ("[T]he appellant's claim falters on the 'clearly established' prong of the qualified immunity test. The record establishes that

- 14 -

a reasonable official in the [Governor's] position could have rationally concluded that his actions were consistent with the Constitution."). Moreover, Skoly never alleges that the CDC guidance on which Rhode Island modeled the First Emergency Regulation obviously lacked any rational basis. Accordingly, Skoly has failed to state a "clearly established right" under either the Equal Protection Clause or the Due Process Clause. See Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 461, 470 & n.12 (1981) (holding that, because Minnesota statute met rational basis review and so "must be sustained under the Equal Protection Clause," "it follow[ed] a fortiori that the Act d[id] not violate the Fourteenth Amendment's Due Process Clause").

It is unclear whether Skoly's complaint attempts to assert a class-of-one equal protection claim. But it is clear from his allegations that he did not sufficiently plead that he was similarly situated to other medical care providers. See Back Beach Neighbors Comm. v. Town of Rockport, 63 F.4th 126, 130 (1st Cir. 2023) ("In a class-of-one [equal protection] claim, the plaintiff must show that 'she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam))). In his complaint, Skoly appears to identify two comparator classes: medically exempt workers and vaccinated workers with an active

- 15 -

COVID-19 infection. But he never plausibly alleges that any member of those comparator classes openly announced an intention to violate the First Emergency Regulation. Nor does he plausibly allege that his comparators' roles required the same degree of direct patient contact as his surgical role did. Accordingly, Skoly has not alleged the "extremely high degree" of similarity between himself and his chosen comparators that is required for a class-of-one equal protection claim. See Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007).

The Rhode Island officials also did not violate the First Amendment by prosecuting Skoly, who had announced his intent not to comply with the First Emergency Regulation. A passive enforcement policy -- where the state focuses its prosecutorial resources on those who announce their intent to violate the law -- generally does not violate the First Amendment. See Wayte v. United States, 470 U.S. 598, 600, 610-14 (1985) (holding that government policy of prosecuting "only those who report themselves as having violated the law" did not violate the First Amendment, because, inter alia, it promoted prosecutorial efficiency and, by "prosecuting visible" violators, "was thought to be an effective way to promote general deterrence"). To be sure, such a policy may still run afoul of the First Amendment when it is "motivated by a discriminatory purpose." Id. at 608. But Skoly does not plausibly allege that McKee or any other official targeted him

- 16 -

solely due to his opposition to the First Emergency Regulation. He alleges only that he was "informed that, because he had 'opened his big mouth' by speaking to the press, he had made his suspension a political issue, not a medical one." He further alleges that, "[t]herefore, with the knowledge and approval of Defendants Alexander-Scott, McDonald and McKee . . . [he] was told that his choice was to submit to vaccination or to stay suspended." As an initial note, this allegation verges on implausible, because Skoly never says who "informed him" of the "opened his big mouth" remark. But leaving that aside, Skoly's allegation is perfectly consistent with a Wayte-compliant passive enforcement policy that -- without any discriminatory intent -- focuses on those who publicly and openly violate the law. Skoly merely alleges that RI DOH issued (and refused to rescind) the Notice because he 'opened his big mouth' and publicly announced his intention to violate the First Emergency Regulation. In other words, RI DOH opted to bring an enforcement action against a person who openly violated the law. This is precisely the type of passive enforcement that Wayte permits.

As to Skoly's separate argument on appeal that the posting of the Notice (as opposed to the issuance of the Notice) on the RI DOH website constituted retaliation, the claim fails. The district court correctly found that this claim was not raised in Count III, such that it was waived.

- 17 -

For the reasons stated above, we <u>affirm</u> judgment in favor of all defendants.